Marvin BRICKNER, Appellant–
Respondent,

v.

Nancy L. BRICKNER, Appellee–
Petitioner.

No. 64A04–9903–CV–128.

Court of Appeals of Indiana.

Feb. 7, 2000.

---

Duane W. Hartman, Blachly Tabor Bozik & Hartman, Valparaiso, Indiana, Attorney for Appellant.

David B. Melton, Vouga & Melton, Portage, Indiana, Attorney for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-respondent Marvin Brickner ("Marvin") appeals from the trial court's order finding that his daughter Nicole is not emancipated under Indiana law and that, as such, he must continue to pay child support on her behalf.

We affirm.

### Issue

Marvin presents a single issue for our review, which we restate as follows: whether the trial court erred when it applied Indiana law to determine that Nicole is not emancipated.

### Facts and Procedural History [1]

The marriage of Marvin and appellee-petitioner Nancy L. Brickner ("Nancy") [2] was dissolved by the Porter Superior Court on February 23, 1979. Nicole, the only child of the marriage, was less than three weeks old at the time, having a birth date of February 5, 1979. [3] When Nicole was approximately three months old, she moved with her mother to Wisconsin, where they have resided ever since.

The Wood County, Wisconsin Child Support Agency sent Marvin a notice dated December 10, 1996, stating:

> Our records show that NICOLE D. BRICKNER turns 18 on FEBRUARY 05, 1997. Under Wisconsin law, child support will continue until age 19, unless the child is not in high school. If you do

1. Oral argument in this case was heard at Valparaiso University School of Law on November 17, 1999. We extend our appreciation to the parties for the quality of their advocacy, as well as to the students, faculty, and administration of the law school for their interest and hospitality.

2. Although Nancy's current surname is Krause, we have referred to her as "Nancy Brickner" to remain consistent with her apparent preference as reflected in the record.

3. In the dissolution decree issued on February 23, 1979, Marvin was ordered to pay forty dollars ($40.00) per week in child support. The payments were to be made through the office of the clerk of the Porter Superior Court. The record indicates that throughout the eighteen-plus years since the original divorce decree and support order were entered, the parties have returned to the Porter Superior Court for purposes of support modification proceedings and rule to show cause/contempt hearings. At the time of Nancy's June 2, 1997, petition for rule to show cause and contempt, Marvin's child support obligation was one hundred dollars ($100.00) per week.

not contact us, support will continue until age 19. Efforts to collect arrearages will continue until it is paid in full. It is your responsibility to provide proof to this office that this child has withdrawn or graduated from high school if under the age of 19. Contact this agency for assistance to ensure your child support payments are adjusted correctly.

Nicole graduated from Nekoosa High School in May of 1997. When Marvin stopped paying child support, Nancy filed a verified petition for a rule to show cause with the Porter Superior Court on May 2, 1997. Thereafter, the trial court cited Marvin for contempt and set the matter for hearing. On July 17, 1997, Marvin filed a petition for emancipation, requesting that the court deem Nicole emancipated under Wisconsin law and terminate his child support obligation.

On December 31, 1998, the trial court denied Marvin's petition for emancipation and entered the following findings of fact and conclusions of law pursuant to Marvin's request: [4]

### FINDINGS

1. This Court attained jurisdiction of this matter and the parties and entered its Dissolution Decree on February 23, 1979, dissolving the marriage of the parties. That there was one child born of the marriage, namely, Nicole D. Brickner, born February 5, 1979. That petitioner, and the minor child, Nicole, moved to the State of Wisconsin, where they have continued to reside.

2. That Nicole graduated from Nekoosa High School in May of 1997.

3. That evidence is presented that if this Court would apply Wisconsin law concerning emancipation of a person, that Nicole would be emancipated at the time of [the] hearing on October 22, 1998.

4. That this Court applied Indiana law in granting the dissolution of marriage, and has applied Indiana law throughout the years in enforcing the support orders of this Court, and in modifying the support orders of this Court without objection from either party.

5. That pursuant to [IND.CODE §] 31–18–2–5,[5] this Court has continuing, exclusive jurisdiction over a child support order because the respondent, Marvin Brickner, has maintained his residence within the State of Indiana, and each individual party has not filed written consent with this Court for any other court in any other state to assume continuing, exclusive jurisdiction.

6. That [IND.CODE §] 31–18–6–4 [6] states that:

> the order and assume continuing, exclusive jurisdiction. . . .
> (b) An Indiana tribunal that issues a child support order consistent with Indiana law may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state that has exercised continuing, exclusive jurisdiction over the order under a law substantially similar to this article.
> (c) If an Indiana child support order is modified by a tribunal of another state under a law substantially similar to this article, the Indiana tribunal:
> > (1) loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in Indiana[.]

---

4. We note with disapproval that Marvin's brief does not contain a verbatim statement of the trial court's judgment as required by Ind. Appellate Rule 8.3(A)(4).

5. IND.CODE § 31–18–2–5 is similar to § 205 of the Uniform Interstate Family Support Act ("UIFSA") and reads:
> (a) An Indiana tribunal that issues a support order consistent with Indiana law has continuing, exclusive jurisdiction over a child support order:
> > (1) if Indiana remains the residence of the:
> > > (A) obligor;
> > > (B) individual obligee; or
> > > (C) child for whose benefit the support order is issued; or
> > (2) until each individual party has filed written consent with the Indiana tribunal for a tribunal in another state to modify

6. IND.CODE § 31–18–6–4 is similar to § 604 of UIFSA.

(a) The law of the issuing state governs the:

(1) nature, extent, amount, and duration of current payments and obligations of support;

(2) payment of arrearages under the order. . . .

## CONCLUSIONS

This Court has continuing, exclusive jurisdiction over the parties and the subject matter of this case pursuant to [IND.CODE §] 31–18–2–5 and that Indiana law continues to apply under [IND.CODE §] 31–18–6–4.

The Court further finds that the respondent has failed to meet his burden of proof under Indiana law that the minor child, Nicole, is emancipated and that his Petition for Emancipation is Denied.[7]

Parties are to coordinate hearing on Petitioner's Petition for Modification of Support and for College Expenses.

Marvin now appeals.

### Discussion and Decision

The instant appeal arises out of differing interpretations of the Uniform Interstate Family Support Act ("UIFSA") as adopted by Indiana and codified at IND.CODE § 31–18–1–1 *et seq.* Marvin specifically relies on IND.CODE § 31–18–2–5(c)(1) for the proposition that Porter Superior Court lost its continuing, exclusive jurisdiction to prospectively enforce its child support order when Nicole was emancipated by operation of Wisconsin law upon her graduation from high school. Put another way, Marvin argues that because Nicole's domicile was and continues to be Wisconsin,[8] the Porter Superior Court was required to give full faith and credit[9] to the law of Wisconsin governing issues of emancipation.

 While we acknowledge the well-settled principle of conflicts law that "the law of the domicile regulates the status of an infant and determines [her] majority or minority," *see* 43 C.J.S. *Infants* § 109 (1978), we note also that our legislature has made a clear policy decision by enacting IND.CODE § 31–18–6–4. This is not to say that the parties cannot agree to avail themselves of a foreign jurisdiction and the application of its laws; indeed, parties may generally choose the law that will govern their agreements. *See Hoehn v. Hoehn*, 716 N.E.2d 479, 483 (Ind.Ct.App. 1999) (trial court properly applied Indiana law rather than Georgia law when it modified Georgia support order because both parties had previously agreed to the application of Indiana law). In the absence of an agreement with respect to choice of law, however, the meaning of IND.CODE § 31–18–6–4 is clear: that the law of the state issuing a child support order governs the "nature, extent, amount, and duration of current payments and other obligations of support."

 Moreover, as Nancy correctly contends, IND.CODE § 31–18–2–5 expressly empowered the Porter Superior Court with the continuing, exclusive jurisdiction to enforce its own support order (1) because Marvin's residence remains in Indiana, *see* IND.CODE § 31–18–2–

---

7. IND.CODE § 31–16–6–6 provides in part that the "duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless … [t]he child is emancipated before becoming twenty-one (21) years of age".

8. The evidence reflects that Nicole has resided in Wisconsin continuously from infancy and has had no contact with her father since moving there in 1979. Indeed, counsel for Nancy went so far as to contend at oral argument that it is doubtful Nicole has even set foot in Indiana since leaving twenty years ago. *See also* IND.CODE § 31–18–1–5 (child's home state defined by UIFSA as state in which child lived with parent "for at least six (6) months immediately preceding the time of filing of a petition or comparable pleading for support[.]").

9. "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. CONST., Art. IV, § 1.

5(a)(1)(A); (2) because neither party filed written consent for a Wisconsin tribunal to modify the child support order and assume continuing, exclusive jurisdiction, *see* IND. CODE § 31–18–2–5(a)(2); and (3) because the child support order was never actually modified by a Wisconsin tribunal under a law substantially similar to UIFSA, *see* IND.CODE § 31–18–2–5(c)(1). The statutory language of UIFSA is plain and unambiguous in its requirement that Indiana law govern determination of the extent and duration of obligations created by Indiana support decrees, and further, that Indiana courts maintain exclusive jurisdiction to enforce such decrees as long as either the obligor, obligee, or child lives in Indiana or until all parties consent to modification by another state. *See Indiana Dep't of Human Servs. v. Firth*, 590 N.E.2d 154, 157 (Ind.Ct.App.1992), *trans. denied* (courts endeavor to give words appearing in statutes their plain and ordinary meaning absent a clearly manifested purpose to do otherwise).

▆▆▆ Our analysis is bolstered by a federal statute that neither Marvin nor Nancy addresses, namely, the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"). *See* 28 U.S.C. § 1738B. Congress enacted the FFCCSOA in 1994 (1) to facilitate the enforcement of child support orders among the States; (2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and (3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders. Congressional Findings and Declaration of Purpose, Pub.L. 103–383, § 2(c). "Under the Supremacy Clause of the United States Constitution, the provisions of [FFCCSOA] are binding on all states and supersede any inconsistent provisions of uniform state laws such as [UIFSA]."

*Wilkie v. Silva*, 141 N.H. 461, 685 A.2d 1239, 1241 (1996); *see also Kelly v. Otte*, 123 N.C.App. 585, 474 S.E.2d 131, 134 (1996), *review denied*; *In re Marriage of Zahnd*, 567 N.W.2d 684, 685 (Iowa Ct.App. 1997).

Much of the language in the FFCCSOA is virtually identical to that of Indiana's version of UIFSA. In particular, the FFCCSOA section pertaining to a state's continuing, exclusive jurisdiction with respect to its own child support orders mirrors IND.CODE § 31–18–2–5:

(d) Continuing jurisdiction.—A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f),[10] has made a modification of the order.

(e) Authority to modify orders.—A court of a State may modify a child support order issued by a court of another State if—. . .

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

28 U.S.C. § 1738B. In addition, section (h)(2) of the FFCCSOA is analogous to IND.CODE § 31–18–6–4 and provides, "In interpreting a child support order including the duration of current payments and other obligations of support, a court shall

---

**10.** Subsection (f) governs a court's recognition of child support orders for purposes of continuing, exclusive jurisdiction when more

than one child support order has been issued by different states.

apply the law of the State of the court that issued the order." *Id.*

The Georgia Supreme Court recently addressed the impact of the FFCCSOA on state courts and concluded that

> [s]ubsections (e), (f), and (i) do not authorize the state last issuing a child support order consistent with the FFCCSOA to decline to exercise its exclusive, continuing jurisdiction over support issues while one party continues to reside in the state and the nonresident party chooses not to consent to jurisdiction in another state. Nothing in the FFCCSOA places discretion in a court of the state with exclusive, continuing jurisdiction over a child support order to decline that jurisdiction over objection by a nonresident party. Indeed any such discretion in the trial court would necessarily obviate the discretion explicitly given by subsection (e)(2)(B) to the individual contestants themselves to decide whether or not to consent to another state obtaining jurisdiction over support issues.

*Early v. Early,* 269 Ga. 415, 417, 499 S.E.2d 329, 330–31 (1998) (reversing Georgia trial court's refusal to exercise jurisdiction over modification of support order originally entered in Georgia, which was no longer child's home state). A strict application of the FFCCSOA's language is preferable, the court reasoned, because it

> [r]etains in the court of the state with continuing, exclusive jurisdiction the authority to enforce the child support orders it rendered; it eliminates any continuing interstate controversies ...; and it draws a bright line rule which clarifies that a court of the state with continuing, exclusive jurisdiction over a child support order will in every instance maintain that continuing, exclusive jurisdiction until one of the provisions in subsections (e), (f), or (i) is applicable.

*Id.*

Likewise, were the Porter Superior Court permitted to apply Wisconsin law instead of Indiana law, the discretion explicitly conferred upon Nancy by both IND. CODE § 3–18–2–5(a)(2) and 28 U.S.C. § 1738B(e)(2)(B) to determine whether she consents to the application of Wisconsin law would be obviated, further rendering IND.CODE § 3–18–6–4 and 28 U.S.C. § 1738B(h)(2) meaningless. UIFSA and the FFCCSOA impart continuing, exclusive jurisdiction upon Indiana courts to enforce their own support decrees in accordance with Indiana law—jurisdiction that can be abrogated only by the affirmative conduct of the parties (e.g., the filing of written consent that another state's jurisdiction apply) or by the actual modification of support by another tribunal.

In sum, the trial court did not err in applying Indiana law to determine that Nicole was not emancipated and in ordering Marvin to continue paying child support. This result is not only consistent with a plain and unambiguous reading of UIFSA and FFCCSOA provisions, but is also concordant with "an age where family residential patterns are increasingly more transient" and where there "is a need to create uniformity among the states with respect to ... enforcement of [support] decrees." *See Desai v. Fore,* 711 A.2d 822, 825 (D.C.1998). In an era of increasing divorce rates and mobility in the job market, it is likely that cases such as the Brickners' are arising with greater frequency. It is thus impractical, even illogical in the absence of some agreement or conduct in accordance with UIFSA and FFCCSOA provisions, to impose the law of a state where the child and her custodial parent may happen to reside. The public interest would not be served were we to adopt a holding that divests Indiana courts of "meaningful ability to enforce [their] orders when nothing has changed except the residence of one or both parents." *Id.* To do so would deprive children of any stability with respect to their parents' obligations of financial support and the pre-

dictability necessary to ensure that those obligations are met.

Affirmed.

KIRSCH and DARDEN, JJ., concur.