Donald O. LODEN, Appellant–Petitioner,

v.

Mary J. LODEN, Appellee–Respondent.

No. 79A05–9911–CV–525.

Court of Appeals of Indiana.

Oct. 25, 2000.

Publication Ordered Nov. 16, 2000.

William E. Emerick, Jamie C. Woods, Stuart & Branigin, Lafayette, Indiana, Attorneys for Appellant.

Carolyn S. Holder, Holder Davis and Smith, Lafayette, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Donald O. Loden appeals from an October 27, 1999 order of the Tippecanoe Superior Court [the Indiana court] in which the Indiana court determined, among other things, that Donald shall be responsible to contribute toward the post-secondary educational costs of his daughter, Angela Loden, and to pay $67.12 per week for Angela's support for each period of seven consecutive days in which Angela resides in Mississippi with her mother, Mary J. Loden. The following restated issues are presented in this appeal:

1. Did the trial court err in ordering Donald to contribute towards Angela's post-secondary education on the basis of Donald's claim that Angela had repudiated the parent-child relationship with Donald?

2. Did the Indiana court err in entering a child support modification pertaining to college expenses given the existence of an order modifying child support entered in a Texas court that held that Donald's support obligation to Angela continued only until Angela reached the age of eighteen or otherwise became emancipated?

We reverse.

The parties were married in Texas on August 16, 1975, and thereafter moved to Indiana so that Donald could attend Purdue University. Angela, the only child of the marriage between the parties, was born on October 29, 1980. On June 30, 1981, the Indiana court entered an order dissolving the parties' marriage. The dissolution decree incorporated the provisions of a separation, support, custody, and

property settlement agreement made by the parties.

Pursuant to the dissolution decree, Mary received physical custody of Angela, and Donald was granted visitation rights, which included "the right to visit the child at reasonable times and places" and "the right to possession of the minor [child] of the parties during the Husband's vacations." *Record* at 13. The dissolution decree further provided that Donald "shall be entitled to extended summer visitation and reasonable holiday visitation." *Id.*

Donald was ordered to pay $75 per month in child support payments. The decree set forth the following provision pertaining to Angela's support: "The Husband is presently in training as a Veterinarian specialist. The completion of this training by the Husband shall constitute an event significant enough to cause reevaluation of the support order." *Id.* at 14.

On July 1, 1981, Mary and Angela moved to Texas. Donald moved from Indiana to Kansas in 1982. After residing in Kansas for approximately one year, Donald moved to Texas.

While both parties and Angela were residing in Texas, Mary filed in the 51st District Court of Tom Green County, Texas [the Texas court] a petition to modify the dissolution decree entered by the Indiana court. On September 12, 1983, the Texas court entered an agreed order, determining that the dissolution decree entered by the Indiana court should be modified and that Donald should pay $250 per month for Angela's support. The Texas court further ordered that visitation should remain the same as set forth in the order entered by the Indiana court. The order entered by the Texas court provided in pertinent part:

The parties have agreed to the terms of this Order as evidenced by their signatures below.

The Court, having considered the pleadings and heard the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that this Court has jurisdiction over the parties and of the child and of the subject matter of this cause.

* * *

IT IS DECREED that the Order dated June 30, 1981, entered by the Judge of the Superior Court # 2, Tippecanoe, Indiana, a copy of which is attached to Petitioner's Amended Original Petition, should be modified and this COURT ENTER [undecipherable] as follows:

* * *

IT IS DECREED that Donald O. Loden pay to Mary J. Loden child support in the amount of Two Hundred Fifty Dollars ($250.00) per month, with the first payment being due and payable on the 25th day of SEPTEMBER, 1983, and a like payment being due and payable on the same day each month thereafter until the child reaches the age of eighteen (18) or [is] otherwise emancipated.

*Record* at 37.

In 1983, Donald moved from Texas to Missouri, where he continues to reside.

On June 19, 1989, while Mary and Angela were still residents of Texas, the Texas court entered an order modifying its prior order and ordering Donald to pay Mary $400 per month for Angela's support. That order stated in pertinent part:

The Court, having examined the pleadings and having heard the evidence and argument of counsel, finds that it has continuing, exclusive jurisdiction of this cause and of all the parties and that no other Court has continuing, exclusive jurisdiction.

* * *

IT IS ORDERED that Movant, DONALD O. LODEN, is obligated to pay and, subject to the provisions for with-

holding from earnings for child support specified below, shall pay to MARY J. LODEN, child support in the sum of $400.00 per month with the first payment being due and payable on the 10th day of May, 1989, and a like payment being due and payable on the same day of each month thereafter until the child reaches the age of 18, and thereafter for so long as the child is fully enrolled in an accredited primary or secondary school in a program leading toward a high school diploma. In the event that the child should become married, deceased, or otherwise emancipated, prior to such date, then the child support payments ordered herein shall cease.

*Record* at 32.

In 1994, Mary and Angela moved to Mississippi. On May 17, 1999, while Mary and Angela continued to reside in Mississippi [1] and while Donald remained a resident of Missouri, Mary filed in the Indiana court a Verified Petition to Modify Dissolution Decree, alleging in pertinent part:

A substantial change in circumstances has occurred since the entry of the last court order modifying child support in that Angela is planning to attend college in the fall of 1999 and the former Husband should be required to contribute to the cost of the college education of Angela.

WHEREFORE, the former Wife prays for an order from this Court requiring the former Husband to contribute to the college education of Angela and for all other just and proper relief in the premises.

*Record* at 21. On June 15, 1999, Donald filed with the Indiana court a Motion to Dismiss or Transfer Proceedings, requesting that the Indiana court either dismiss this action on the ground that the court lacked subject matter jurisdiction or transfer this action to the Texas court, which he alleged had more significant contact with the parties and was a more convenient forum.

The trial court, following a hearing, denied Donald's motion to dismiss for lack of subject matter jurisdiction. The trial court conducted a hearing on October 15, 1999 on Mary's petition to modify. At the time of the hearing, Angela was eighteen years old and attending Southwestern University in Georgetown, Texas.

Mary testified at the hearing regarding the contact, or relative lack thereof, between Donald and Angela after the divorce. Angela was less than a year old at the time of the dissolution. When Angela was two years old, Donald spent the day with her after he attended Mary's father's funeral. Donald never contacted Mary to request visitation with Angela. In fact, Mary testified that, either before or shortly after the divorce, Donald told her that he did not want a relationship with Angela and that it would be better if he had no contact with her, especially if Mary were to remarry. According to Mary, Donald wrote to Angela once and also saw Angela once when he went to Texas for the child support modification hearing when Angela was seven or eight years old. Mary testified that, for approximately four years, Angela received birthday and Christmas presents from Donald, and Angela responded with thank-you notes.

Donald admitted at the hearing that, until 1988, he made no attempt to see Angela. Nonetheless, he claimed that he informed the Texas court in 1988 that he wanted to establish contact with Angela. Donald testified that he began to write letters to Angela at that time and told her about his family in Missouri, but that Angela never responded to the letters. According to Donald, Mary complained to him in 1989 or 1990 that the letters were upsetting to Angela. Donald testified that he thereafter sent birthday and Christmas

---

1. While there was evidence presented to the trial court that Angela completed her high school education in Texas and attended college there, Mary testified that Angela was a resident of Mississippi and had been so since 1994.

gifts to Angela, and that he received a picture and a thank-you card the first year, but that he received no other response from Angela until he received a high school graduation announcement from her in 1999. Donald admitted that he made no attempt to telephone Angela at any time between 1991 and 1999 or to visit with her at her home after the day of Mary's father's funeral. Donald did not attend Angela's high school graduation and did not respond to the graduation invitation in any way.

On October 27, 1999, the Indiana court entered the order from which Donald appeals. The order states in pertinent part:

> The parties appear in person and by counsel. Evidence having been submitted on the Wife's Verified Petition to Modify Dissolution Decree, the Court finds as follows:
>
> 1. It has subject matter jurisdiction with regard to the issues presented.
>
> 2. The Husband's weekly gross income is $500.00, and he has seven subsequently born children as disclosed in Wife's Exhibit Five. Husband is employed as a veterinarian four hours per day and home schools his seven subsequently born children for the balance of his time. The Mother's weekly gross income is $547.11.
>
> 3. Angela Loden, born October 29, 1980, has the aptitude and ability for higher education. The Court finds that the cost of such higher education at a state supported institution is $11,364.00 including university fees, books and supplies, room and board, miscellaneous expenses, and travel costs pursuant to Wife's Exhibit Two.
>
> 4. The Court finds that the child should be required to pay 20% of those costs, or $2,272.00. The balance of the obligation of $9,091.00 should be shared between the parties in proportion to their relative income with the Husband's obligation being $3,985.12, one-half of that amount due at the beginning of each semester commencing with the fall semester 1999. In addition, the Husband shall be required to pay $67.12 per week for support for each period of seven continuous days in which Angela resides with her mother in Mississippi effective June 1, 1999.

*Record* at 68–69.

Donald thereafter filed this appeal.

1.

■ Donald claims that the Indiana court erred in awarding post-secondary educational support to Angela because Angela repudiated the parent-child relationship with him.

In *McKay v. McKay*, 644 N.E.2d 164 (Ind.Ct.App.1994), *trans. denied*, this court adopted the rationale of a Pennsylvania decision in which the court "held that where a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect [the repudiation] will have on his or her contribution to colleges expenses for that child." *McKay v. McKay*, 644 N.E.2d at 166. In *McKay*, the parties were divorced in 1984, and the mother was awarded custody of the parties' three children, including Joel, and the father was awarded reasonable visitation and ordered to pay child support. The mother filed a post-dissolution modification petition, seeking to have the father provide for his son Joel's college expenses. At the time of the hearing on the petition, Joel, a twenty-year-old adult, had repudiated his relationship with his father and rejected all of his father's efforts to reconcile their relationship. Joel testified that he had no interest in reestablishing a relationship with his father and nothing could be done to change his mind. This court noted that all Joel wanted from his father was money. This court determined that Joel's repudiation of the father-son relationship relieved his father of any further responsibility to contribute toward Joel's college education.

Donald has failed to establish that, as an adult over the age of eighteen, Angela repudiated the father-daughter relation-

ship. To the contrary, evidence was presented that Angela sought to reestablish a relationship with Donald by sending him an invitation to her high school graduation, and that Donald failed to either acknowledge the event or respond to Angela in any way. Donald is not entitled to relief on this basis.

2.

■ Donald next claims that the Indiana court erred in refusing to dismiss or transfer to the Texas court the petition seeking post-secondary educational support. He claims that the Indiana court was required to abide by and give full faith and credit to the order of the Texas court, which held that Donald's support obligation to Angela continued only until she reached the age of eighteen or otherwise became emancipated. According to Donald, the Indiana court erred in allowing Mary to petition for and receive a modification of the Indiana court's order of dissolution and child support in a Texas tribunal and then return to Indiana to seek relief not available in the foreign jurisdiction.

■ When reviewing a trial court's order requiring a parent in a post-dissolution proceeding to pay a portion of the parent's child's post-secondary education expenses, we will reverse only if the trial court's decision is clearly erroneous. *Thacker v. Thacker,* 710 N.E.2d 942 (Ind. Ct.App.1999). When determining whether a trial court's judgment or findings are clearly erroneous,

> [W]e consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made.

*Mullis v. Brennan,* 716 N.E.2d 58, 62 (Ind. Ct.App.1999) (citation omitted).

We agree with Donald that the Indiana court should have dismissed the petition to modify filed by Mary. Both state and federal statutes support such result. Section 5 of Chapter 2 of the Indiana Uniform Interstate Family Support Act [UIFSA] provides in pertinent part:

> (a) An Indiana tribunal that issues a support order consistent with Indiana law has continuing, exclusive jurisdiction over a child support order:
>
> (1) if Indiana remains the residence of the:
>
> (A) obligor;
>
> (B) individual obligee; or
>
> (C) child for whose benefit the support order is issued; or
>
> (2) until each individual party has filed written consent with the Indiana tribunal for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

There is no indication in the record that, in 1983, the individual parties in this case filed written consent with the Indiana court for the Texas court to modify the dissolution decree issued by the Indiana court even though the parties specifically agreed to the terms of the order modifying support which was entered in 1983 by the Texas court. Thus, it appears that the Indiana court retained continuing, exclusive jurisdiction pursuant to subsection (a) of UIFSA. Nonetheless, subsection (b) of UIFSA provides:

> (b) An Indiana tribunal that issues a child support order consistent with Indiana law may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state that has exercised continuing, exclusive jurisdiction over the order under a law substantially similar to this article.

Thus, while the Indiana court retained continuing jurisdiction, it could not, consistent with subsection (b) above, exercise that jurisdiction to modify its original child support order because the order had twice

been modified by the Texas court. This result is reinforced by subsections (c) and (d) of UIFSA, which provide:

(c) If an Indiana child support order is modified by a tribunal of another state under a law substantially similar to this article, the Indiana tribunal:

(1) loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in Indiana; and

(2) may only:

(1) Enforce the order that was modified concerning amounts accruing before the modification.

(2) Enforce nonmodifiable aspects of that order.

(3) Provide other appropriate relief for a violation of the order that occurred before the effective date of the modification.

(4) Recognize the modifying order of the other state, upon registration, for the purpose of enforcement.

(d) An Indiana tribunal shall recognize the continuing, exclusive jurisdiction of a tribunal of another state that has issued a child support order under a law substantially similar to this article.

Ind.Code Ann. § 31–18–2–5 (West 1999).

Even if UIFSA permitted the Indiana court to exercise its jurisdiction in this case, federal law would prevent the Indiana court from so doing. The Full Faith and Credit for Child Support Orders Act [FFCCSOA], 28 U.S.C. § 1738B, was enacted by Congress in 1994. The provisions of FFCCSOA are, pursuant to the Supremacy Clause of the United States Constitution, binding on all states and supercede any inconsistent provision of a uniform state law such as UIFSA. *Brickner v. Brickner,* 723 N.E.2d 468 (Ind.Ct. App.2000), *trans. denied.* 28 U.S.C. § 1738B provides in pertinent part:

(a) General rule.—The appropriate authorities of each State—

(1) shall enforce according to its terms a child support order made consistently with this section by a court of another State; and .

(2) shall not seek or make a modification of such an order except in accordance with subsections (e), (f), and (i).

Even though FFCCSOA was not enacted until 1994, the orders modifying child support entered in 1983 and 1989 by the Texas court appear to have been made consistently with the provisions of FFCCSOA. Thus, the Indiana court was required to enforce the 1989 child support order entered by the Texas court and was not permitted to modify such order except in accordance with subsections (e), (f), and (i) of FFCCSOA. Subsections (e) and (i) provide in pertinent part:

(e) Authority to modify orders.—A court of a State may modify a child support order issued by a court of another State if—

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i); and

(2) (A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

\* \* \*

(i) Registration for modification.—*If there is no individual contestant or child residing in the issuing State, the party* or support enforcement agency *seeking to modify, or modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the*

*nonmovant for the purpose of modification.*

(Emphasis supplied.)

Here, there is no individual contestant or child residing in the issuing state. Therefore, pursuant to subsection (i) above, Mary was required to register the order she sought to modify in a state with jurisdiction over Donald, the nonmovant. Because Donald was a resident of Missouri, Indiana did not have jurisdiction over him. Therefore, pursuant to subsections (a) and (e), Indiana did not have authority to modify the child support order entered by the Texas court.

 Indiana did not have authority to modify the child support order entered by the Texas court for an additional reason. Subsection (d) of the FFCCSOA provides:

> (d) Continuing jurisdiction.—A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant *unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.*

28 U.S.C. 1738B(d) (emphasis supplied). Pursuant to subsection (d) above, the modification by the Texas court of the original child support order entered in Indiana operated to extinguish the Indiana court's continuing, exclusive jurisdiction.

Based on the foregoing, we conclude that the Indiana court clearly erred in modifying the child support order entered by the Texas court and in entering the October 27, 1999 order pertaining to college expenses and child support.

Judgment reversed.

MATHIAS and NAJAM, JJ., concur.

### ORDER

This Court having heretofore on October 25, 2000, handed down its opinion in this appeal marked Memorandum Decision, Not for Publication;

Comes now the Court, on its own motion, and finds that said opinion should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. Upon its own motion, this Court's opinion heretofore handed down in this cause on October 25, 2000, is now ordered Published.