**In re the Marriage of Mahmoud M. BASILEH, Appellant–Respondent,**

v.

**Arwa G. ALGHUSAIN, Appellee–Petitioner.**

No. 29A02–0712–CV–1132.

Court of Appeals of Indiana.

July 28, 2008.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellant.

Peter S. French, Joseph P. Rompala, Lewis & Kappes, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After the Indiana trial court granted the motion of Arwa Alghusain ("Mother") to transfer jurisdiction over her children's child support matters to her home county of Monterey County, California, Mahmoud M. Basileh ("Father"), the children's father, appeals. Pursuant to the jurisdiction provision of the Uniform Interstate Family Support Act ("UIFSA"), continuing, exclusive jurisdiction over child support matters may not be transferred out-of-state when neither the parents nor the children remain residents of Indiana until all parties file a written consent with the Indiana tribunal. However, under the federal Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), written consent by the parties to transfer continuing, exclusive jurisdiction is not required where neither the children nor the parties reside in Indiana. The federal statute prevails over the state statute, and we conclude that Mother, Father, and the children are all not residents of Indiana. We therefore affirm.

### Facts and Procedural History

Mother and Father were married and had two children, born July 21, 1999, and September 8, 2000, and lived in Noblesville, Indiana. The parties divorced in 2002, and the trial court granted joint legal custody over the children to both parents, with Mother having physical custody of both children. At the time of the dissolution proceedings and settlement agreement negotiations, Mother indicated a plan to relocate with the children to Marina, California, in Monterey County. Appellant's App. p. 16. The parties agreed to a weekly child support amount payable by Father to Mother, *id.* at 22–25, and to a liberal visitation schedule between Father and the children. The original child support amount has since been modified by agreement of the parties. *Id.* at 35–36.

After the parties' divorce, Mother moved with the children to Monterey County, California, while Father resided in Bloomington, Indiana. The cooperative parenting relationship envisioned by the parties in their settlement agreement disintegrated, and on May 12, 2004, Mother petitioned for a modification of the custody arrangement such that she would be the sole custodial parent of the children. Appellee's App. p. 28. In her petition, she suggested that "further jurisdiction over the parties and subject matter should be transferred to the State of California." *Id.*

Sometime in mid- or late–2004, Father left Indiana and "moved back" to his native country of Jordan to be with his ailing mother. *Id.* at 32. Father, who is remarried, resided with his new wife and their child in Father's parents' home in Jordan. *Id.* When Father first "relocated," *id.* at 33, to Jordan, he had an arrangement with his Indiana employer under the Family Medical Leave Act, *id.* at 32. However, after he was "unable to return to Indiana at the expiration of the FMLA period due to his [m]other's continued illness," Father's employment was terminated on December 1, 2004. *Id.* He remained in Jordan with his family and sought employment in either Jordan or the United States. *Id.*

In February 2005, Mother registered the parties' Indiana dissolution decree and agreements regarding child custody, par-

enting time, and child support with the Monterey County, California, trial court. She also "filed for an Application for Order and Support Declaration" from the California court. Appellant's App. p. 50.[1] On February 28, 2005, the California court entered a temporary order pertaining to visitation and child custody. *Id.* Father then filed an objection in the Indiana trial court to the transfer of jurisdiction to California, Appellee's App. p. 30–37, and, in response, Mother filed a motion to transfer jurisdiction and to stay other proceedings related to the parties' children until the Indiana trial court ruled upon the motion to transfer jurisdiction, Appellant's App. p. 50–56.

The Indiana trial court granted Mother's motion on May 6, 2005. Its written order provides: "After reviewing the pleadings and hearing the arguments of counsel, the Court hereby concedes and relinquishes its jurisdiction under the [Uniform Child Custody Jurisdiction Act] to the Superior Court of Monterey County, California. All pending matters will be transferred to be heard by the Superior Court in California." *Id.* at 64. Evidence in the record reflects that the California court thereafter accepted jurisdiction over the parties' child custody and visitation matters but concluded that jurisdiction over the parties' child support matters had not been transferred from Indiana. *Id.* at 70.

More than two years after the Indiana trial court's order transferring jurisdiction,

on August 30, 2007, the Monterey County, California, trial court sent a "Memorandum" to the Indiana trial court. The memorandum informed the Hamilton County court that Mother and the children reside in California, that Father "now resides in Saudi Arabia," and that the parties have conducted visitation following orders issued by the California court and asked "whether Hamilton County [Indiana] will cede jurisdiction to Monterey County [California]." *Id.* at 67. Father soon filed a notice with the Indiana court of his objection to the transfer of jurisdiction "over all matters related to child support and enforcement." *Id.* at 70. After reviewing Father's notice and past pleadings filed by the parties, noting that it had intended to transfer jurisdiction over matters involving child support to the California courts in its May 2005 order, and finding Indiana to be an inconvenient forum for the parties, the trial court "cede[d] jurisdiction to the Superior Court of Monterey County California in all matters pertaining to visitation, custody, and child support matters." *Id.* at 11–12. Father now appeals.

### Discussion and Decision

Father appeals the trial court's transfer of jurisdiction over the parties' child support matters to Monterey County, California.[2] Because we conclude that, pursuant to the jurisdiction provision of the FFCCSOA, the trial court properly transferred jurisdiction over the case to the California courts, we affirm.[3]

1. The parties have not provided this filing or other materials listed as exhibits in support of Mother's subsequent motion to transfer jurisdiction to the State of California, and we do not, therefore, know what exactly Mother sought in the California court.

2. To the extent that Father argues that the trial court erred in transferring jurisdiction under the Uniform Child Custody Jurisdiction Act, we find that he has waived this argument. The trial court's May 2005 order

transferred jurisdiction over the parties' child custody and parenting time matters to California pursuant to the UCCJA, and Father did not appeal that decision.

3. Father also argues that the trial court abused its discretion in finding that Indiana is an inconvenient forum for the parties. We need not reach this argument because we conclude that the trial court properly determined that it no longer has continuing, exclu-

Father's argument pertaining to the transfer of jurisdiction involves the interpretation of a statutory provision, namely the jurisdiction provision of the UIFSA, and therefore our review of this matter is *de novo*. *Cox v. Cantrell*, 866 N.E.2d 798, 805 (Ind.Ct.App.2007), *reh'g denied, trans. denied*. Further, "[w]here, as here, the trial court decided the jurisdictional facts based upon a paper record, we are in as good a position as the trial court to determine the existence of the jurisdictional facts, and we review the factual findings *de novo*." *El v. Beard*, 795 N.E.2d 462, 464–65 (Ind.Ct.App.2003) (quotation omitted); *Am. Family Ins. Co. v. Ford Motor Co.*, 857 N.E.2d 971, 973 (Ind.2006).

Indiana has adopted the UIFSA, a uniform act with a primary purpose of simplifying child support matters and the collection of child support in today's mobile society. *Tate v. Fenwick*, 766 N.E.2d 423, 426 (Ind.Ct.App.2002). It is a "mechanism ... for cooperation between state courts in enforcing duties of support." *Johnston v. Johnston*, 825 N.E.2d 958, 962 (Ind.Ct.App.2005) (citing *Stidham v. Whelchel*, 698 N.E.2d 1152, 1156 n. 1 (Ind. 1998)). Among other things, the statute provides guidance for Indiana trial courts asked to exercise jurisdiction over child support matters where one or both parties do not live in the state and where another state's courts have already exercised jurisdiction or may seek to do so.

Under the UIFSA, two distinct types of jurisdiction over child support orders are recognized: the jurisdiction to enforce a child support order and the jurisdiction to modify a support order. Regarding juris-diction to modify a child support order, a state with continuing, exclusive jurisdiction may modify a child support order. Here, the trial court concluded that Indiana no longer has continuing, exclusive jurisdiction over the parties' child support matters and that jurisdiction over them should be fully transferred, thus permitting California to both enforce and modify the Indiana child support order. Appellant's App. p. 12 (citing § Ind.Code 31–18–2–5).[4] The UIFSA provides:

(a) An Indiana tribunal that issues a support order consistent with Indiana law has continuing, exclusive jurisdiction over a child support order:

(1) if Indiana remains the residence of the:

(A) obligor;

(B) individual obligee; or

(C) child for whose benefit the support order is issued; *or*

(2) until each individual party has filed written consent with the Indiana tribunal for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

I.C. § 31–18–2–5(a) (emphasis added). Mother argued to the trial court that because neither of the parties nor the children live in Indiana, I.C. § 31–18–2–5(a)(1), Indiana does not have continuing, exclusive jurisdiction under the UIFSA. However, as we have observed in the past, "[t]he words 'and' and 'or' as used in statutes are not interchangeable, being strictly of a conjunctive and disjunctive nature respectively." *In re B.J.*, 879 N.E.2d 7, 20 (Ind.Ct.App.2008) (citing *Bourbon Mini-Mart, Inc. v. Comm'r, Ind. Dep't of Envtl.*

---

sive jurisdiction over the parties' child support matters.

**4.** Regarding jurisdiction to simply enforce the order, Indiana courts may always enforce valid child support orders. I.C. § 31–18–2–5(c).

Additionally, the trial court, as the issuing court, had the power to request a tribunal of another state to enforce its order. Ind.Code § 31–18–2–3(1).

*Mgmt.*, 806 N.E.2d 14, 20 (Ind.Ct.App. 2004)), *trans. denied.* The use of "or" in Indiana Code § 31–18–2–5(a) makes the statutory provision disjunctive. Thus, even if no persons involved in this case remain in Indiana, we find that the clear language of the statute provides that Indiana retains continuing, exclusive jurisdiction under subsection (a) because both parties have not "filed written consent with the Indiana tribunal for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction." I.C. § 31–18–2–5(a)(2); *see Brickner v. Brickner,* 723 N.E.2d 468, 472 (Ind.Ct.App. 2000) (describing the statutory language of the UIFSA as "plain and unambiguous"), *trans. denied.* Our reading of subsection (a) is supported by an earlier decision from this Court that read the statute in like fashion. In *Loden v. Loden,* 740 N.E.2d 865, 870 (Ind.Ct.App.2000), another panel of this Court determined that where no parties or affected children resided in Indiana and the parties did not file written consent with the Indiana court for a Texas court to modify their support order, "it appear[ed] that the Indiana court retained continuing, exclusive jurisdiction pursuant to subsection (a) of UIFSA." *Loden* went on to explain that, in that case, other subsections of Indiana Code § 31–18–2–5 dictated that Indiana lost its continuing, exclusive jurisdiction. Specifically, where another state's tribunal has modified the support order, Indiana loses the exclusive jurisdiction that it would otherwise have under subsection (a). I.C. § 31–18–2–5(b), (c), (d); *Loden,* 740 N.E.2d at 870–71. In the case before us, however, the record does not reflect that California has acted to modify the Indiana support order, and subsection (a) is the only provision pertinent to our discussion. *See also Brickner,*

723 N.E.2d at 473 (observing that the "UIFSA ... impart[s] continuing, exclusive jurisdiction upon Indiana courts to enforce their own support decrees in accordance with Indiana law—jurisdiction that can be abrogated only by the affirmative conduct of the parties (e.g., the filing of written consent that another state's jurisdiction apply) or by the actual modification of support by another tribunal").

In this case, Father has not filed written consent for a California court to assume continuing, exclusive jurisdiction over the parties' child support order. Thus, pursuant to Indiana Code § 31–18–2–5(a)(2), Indiana retains continuing, exclusive jurisdiction over the parties' child support order.

■ However, we are faced not only with an Indiana statutory provision regarding a state's continuing, exclusive jurisdiction over a child support order but also with the parallel provision under the federal FFCCSOA, 28 U.S.C. § 1738B(d). Pursuant to the Supremacy Clause of the United States Constitution, "[t]he provisions of FFCCSOA are ... binding on all states and supercede any inconsistent provision of a uniform state law such as UIFSA." *Loden,* 740 N.E.2d at 871. 28 U.S.C. § 1738B(d) provides:

(d) **Continuing jurisdiction**—A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order *if the State is the child's State or the residence of any individual contestant* unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.[5]

5. Subsections (e) and (f) provide for the authority to modify orders and the recognition of child support orders, respectively.

(Emphasis added). The distinction between this provision and Indiana Code § 31–18–2–5(a) is crucial. As we just concluded, under the Indiana provision, Indiana retains continuing, exclusive jurisdiction when, even though no people involved in the case remain in Indiana, both parties have not "filed written consent with the Indiana tribunal for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction." I.C. § 31–18–2–5(a)(2). However, under the FFCCSOA, Indiana does not have continuing, exclusive jurisdiction if it is not "the child's State [6] or the residence of any individual contestant." 28 U.S.C. § 1738B(d). The FFCCSOA contains no requirement that the parties file written permission with the Indiana court in order to allow another state to assume jurisdiction. Instead, written consent is merely another way for a different state to obtain continuing, exclusive jurisdiction. 28 U.S.C. § 1738B(e)(2)(B).[7] We acknowledge that another panel of this Court has previously written that "the FFCCSOA section pertaining to a state's continuing, exclusive jurisdiction with respect to its own child support orders mirrors Ind.Code § 31–18–2–5." *Brickner,* 723 N.E.2d at 472. Our reading of the two provisions,

however, leads us to disagree, and the federal provision controls.

Additionally, our conclusion that the controlling federal provision establishes exclusive jurisdiction over a child support order in the state with a closer nexus with the affected persons is buttressed by fairly recent revisions to the model UIFSA, which have clarified that this is the intended result under the UIFSA. The National Conference of Commissioners on Uniform State Laws, the organization that drafted the model UIFSA from which Indiana derived its version of the UIFSA, issued amendments to the UIFSA in 200 1.[8] Notably, the 2001 amendments replace language similar to that found in Indiana Code § 31–18–2–5(a) regarding continuing, exclusive jurisdiction over a child support order. *See* Unif. Interstate Family Support Act § 205(a) (amended 2001), 9(IB) U.L.A. 192 (2005). The commentary following the revision explains,

> As long as one of the individual parties or the child continues to reside in the issuing State, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its child-support order—which in practical terms means that it may modify its order.... The other side

---

6. The "child's State" is the "State in which a child resides." 28 U.S.C. § 1738B(b).

7. 28 U.S.C. § 1738B(e) provides:
   (e) **Authority to modify orders**—A court of a State may modify a child support order issued by a court of another State if—
   (1) the court has jurisdiction to make such a child support order pursuant to subsection (1); and
   (2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order *because that State no longer is the child's State or the residence of any individual contestant;* or
   (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of

another State to modify the order and assume continuing, exclusive jurisdiction over the order.
(Emphasis added). We recognize that the language contained in this subsection is similar to the language found in Indiana Code § 31–18–2–5(a). However, the language of Indiana Code § 31–18–2–5(a) and 28 U.S.C. § 1738B(d) and (e) render the state and federal laws in conflict because they define continuing, exclusive jurisdiction differently.

8. These amendments were approved by the ABA in February 2002. ABA Center on Children & the Law Uniform Acts & Conventions, http://www.abanet.org/child/uniform.shtml (last visited July 14, 2008).

of the coin follows logically. Just as Subsection (a) defines the retention of continuing, exclusive jurisdiction, by clear implication the subsection also identifies how jurisdiction to modify may be lost. That is, if all relevant persons—the obligor, the individual obligee, and the child—have permanently left the issuing State, the issuing State no longer has an appropriate nexus with the parties or child to justify the exercise of jurisdiction to modify its child-support order.

Comment, 9(IB) U.L.A. 194.

Because the provision of the FFCCSOA is binding and supercedes the state's provision, we conclude that, if neither party nor the parties' children reside in Indiana, Indiana no longer has continuing, exclusive jurisdiction over the parties' child support order.

■ Mother and the parties' children reside in California. The question becomes, then, whether Father remains a resident of Indiana, as he contends. The FFCCSOA does not define the term "residence." *See* 28 U.S.C. § 173B(b).[9] Where a statute does not define a term, "we construe a statutory term in accordance with its ordinary or natural meaning." *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 430 (Ind.Ct.App.2007) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)), *reh'g denied.* We are "required to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience." *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind.2003).

Our research does not reveal any cases from the federal courts interpreting the term "residence" under the FFCCSOA, nor does the Code of Federal Regulations shed light upon a Congressional intent to define the term in a particular manner in the context of the FFCCSOA. Where a federal statute employs a term but does not define it, the United States Supreme Court has looked to the law of the state wherein the suit originated to determine the definition of the term. *United States v. Mitchell*, 403 U.S. 190, 195, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971) (citing *Poe v. Seaborn*, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (1930); *United States v. Robbins*, 269 U.S. 315, 46 S.Ct. 148, 70 L.Ed. 285 (1926)). This is particularly favored in cases involving a federal statute acting in an area that is preeminently a matter of state law, such as domestic relations, where Congress is silent regarding the definition of a statutory term. *N.M. Dep't of Human Serv. v. Dep't of Health & Human Serv. Health Care Fin. Admin.*, 4 F.3d 882, 885 (10th Cir.1993).

Indiana courts have never construed the term "residence" when applying the FFCCSOA.[10] However, we have analyzed the meaning of the term under Indiana law in a multitude of other contexts that are helpful to our present review. As we have observed in the past, "resident" "is an amorphous term." *Allstate Ins. Co. v. Neumann*, 435 N.E.2d 591, 593 (Ind.Ct. App.1982); *see also* Willis L.M. Reese & Robert S. Green, *That Elusive Word, "Residence,"* 6 Vand. L.Rev. 561 (1953). Read in its strictest sense, "the term refers to actual presence" in a location. *Neumann*, 435 N.E.2d at 593. It may also, however, be used to reference domicile, which "once acquired ... may be

9. The UIFSA also does not define the term "residence." *See* Ind.Code ch. 31–18–1.

10. The Indiana courts also have not construed "residence" in the context of the UIFSA.

maintained although physical presence is elsewhere." *Id.* At issue between the parties on appeal is whether, in the context of jurisdiction over child support matters, "residence" means where a person actually lives or whether the term has the broader meaning of domicile. Mother contends that "residence" should be construed narrowly, while Father advocates a broader reading of the term.

Historically, the term "residence" connoted the place where a person was located and presently lived. *See Yarborough v. Yarborough,* 290 U.S. 202, 211, 54 S.Ct. 181, 78 L.Ed. 269 (1933) (distinguishing between the temporary residence of a child in a state, where she had been taken by a parent, and the child's legal domicile). "Domicile," on the other hand, was characterized by the person's intention to live and make a home in a particular place. *Croop v. Walton,* 199 Ind. 262, 157 N.E. 275, 277 (1927).

Now, our Supreme Court uses the terms "residence" and "domicile" synonymously in certain circumstances. One such circumstance is when "construing a statute which prescribes residence as a qualification for the enjoyment of a privilege, or the exercise of a franchise." *Bd. of Med. Registration & Examination v. Turner,* 241 Ind. 73, 168 N.E.2d 193, 196 (1960). *See also State Election Bd. v. Bayh,* 521 N.E.2d 1313, 1317 (Ind.1988) (Construing the state Constitutional requirement that a gubernatorial candidate be a "resident of the State," the Court repeated that "for purposes of 'the enjoyment of a privilege, or the exercise of a franchise, ... domicile and residence are deemed to be equivalent or synonymous, i.e. that the word residence is deemed to mean domicile.'") (quoting *Turner,* 168 N.E.2d at 196); *Matter of Evrard,* 263 Ind. 435, 333 N.E.2d 765, 768 (1975) (In regard to voting residence, "[t]he law requires that the person

definitely intend to make a particular place his permanent residence and act upon that intention in good faith. The person must show to the court evidence of acts undertaken in furtherance of the requisite intent, which make that intent manifest and believable."); *but see Matter of Evrard,* 333 N.E.2d at 773 (Hunter, J., dissenting) ("Ordinarily, residence simply connotes the place where a person lives.").

We turn now to the question of the meaning of "residence" as used in the FFCCSOA. The FFCCSOA grants continuing, exclusive jurisdiction over a child support matter to a state "if the State is the child's State or the *residence of any individual contestant*" unless another state has already modified the relevant support order. 28 U.S.C. § 1738B(d) (emphasis added).

The FFCCSOA was enacted to create national standards by which the courts of different states can discern which states have jurisdiction over the modification and enforcements of a child support order. Full Faith and Credit for Child Support Orders Act, Pub.L. No. 103–383, § 2(b), 108 Stat. 4063, 4064 (1994). By operation of the FFCCSOA, if Father's "residence" is in Indiana, he will enjoy continued access to the Indiana courts for the purpose of modifying his existing child support order. 28 U.S.C. § 1738B(d). Thus, by virtue of residency in Indiana, Father will enjoy access to this State's courts when seeking to modify the parties' child support order. This constitutes "the enjoyment of a privilege, or the exercise of a franchise" as envisioned by our Supreme Court when it determined that, in such circumstances, "residence" and "domicile" are synonymous. *Bayh,* 521 N.E.2d at 1317; *Turner,* 168 N.E.2d at 196.

We now proceed to the question of whether Father was domiciled in Indiana at the time of the trial court's

order. "Domicile" means "the place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning." *Bayh*, 521 N.E.2d at 1317. To change one's domicile, one must intend to do so. *Id.* As such, we examine Father's subjective intent with regard to his move away from Indiana. That is, we look to his intent to stay in the new location or return to Indiana. In addition, Indiana law incorporates an objective component into the determination of whether a person's domicile has been changed by relocation. In doing so, we look at whether an intended return is based upon a discernable future event:

> Where there is a complete removal of residence, with an intention to remain an indefinite time, even though there may be a floating intention to return to the former domicile at some future and indefinite period, it has been held that there has been a change of domicile. But an intention to return on the occurrence of some event which may reasonably be anticipated, as when the health of a relative has been restored, is not such an indeterminate or floating intention.

*Croop*, 157 N.E. at 278.

Here, Father presented evidence in two filings to the trial court pertaining to the circumstances surrounding his move away from Indiana.[11] In March 2005, he objected to jurisdiction being transferred to California by informing the court that he left Indiana sometime before December 2004 and "moved back to Jordan." Appellee's App. p. 32. He wrote:

> Because of a change in circumstances, that being the illness of [Father]'s elderly [m]other, [Father] has moved back to Jordan, where he currently resides with his current U.S. citizen wife and minor child from his current marriage. [Father] originally went to Jordan temporarily under a FMLA agreement with his employer. When [Father] was unable to return to Indiana at the expiration of the FMLA period due to his [m]other's continued illness, he was terminated from employment as of December 1, 2004. [Father] is presently pursuing employment in both Jordan and the United States, but has yet to obtain new employment. [Mother] has been informed of the address and phone number of the residence of [Father's] parents, where [Father] and his family are residing.

*Id.* However, later, in his September 2007 "Verified Notice of Respondent's Objection to Transfer of Jurisdiction to California," Father informed the court that he left Indiana in 2005 and moved temporarily to Saudi Arabia. Specifically, he asserted:

> In 2005, due to circumstances involving his extended family, Respondent temporarily relocated to the country of Saudi, and is currently working under a one (1) year temporary employment contract as a U.S. Expatriate.... Respondent *continues to maintain a storage unit in Indiana where his personal belongings are stored*, continues to file and [sic] Indiana state income tax return as an Indiana resident, continues to maintain a bank account in Indiana, maintains an

---

**11.** Father contends that the trial court improperly treated the contents of these filings as binding admissions under the doctrine of judicial estoppel. Appellant's Br. p. 9. This is not, however, what the trial court did. There is no question that a trial court may take judicial notice of the filings in the case that is being tried, *Rosendaul v. State*, 864 N.E.2d 1110, 1116 (Ind.Ct.App.2007), *trans. denied*, and the trial court in this case merely used these filings from Father to examine whether Father remained a resident of Indiana.

Indiana Driving License, and continues to maintain his Indiana permanent mailing address as well as an Indiana telephone number. Respondent *is neither a Saudi citizen nor a Saudi permanent resident* and considers his relocation to Saudi to be *temporary,* with the intention of physically moving back to Indiana.

Appellant's App. p. 69 (underlining in original). The record contains no documentation of these claims. Several things stand out as we read Father's two filings side by side. First, Father presented inconsistent information to the trial court. In his first filing, he claimed to have left Indiana sometime in 2004 and moved with his family to Jordan in order to be with his ailing mother. *Id.* In the other filing, he purported to have moved to Saudi Arabia in 2005 "due to circumstances involving his extended family." *Id.* Our second observation is that, although Father's 2007 filing claimed that he intended to move back to Indiana after his relocation, he made no such claim in his 2005 motion. Instead, he informed the court only that he was pursuing employment in both Jordan and the United States, generally. Appellee's App. p. 32. From the evidence contained in the pleadings, Father has failed to show a subjective intent to return to Indiana. In addition, there is no evidence that he intends to return to this State upon some discernable event. Instead, Father removed himself from Indiana for an "indefinite time," and he presented no evidence of "an intention to return on the occur-

rence of some event which may reasonably be anticipated." *Croop,* 157 N.E. at 278.

Based upon our review of the record, we conclude that Father is no longer domiciled in Indiana and that Indiana is therefore not his place of "residence" for the purposes of the FFCCSOA.[12] Thus, pursuant to the FFCCSOA, Indiana no longer has continuing, exclusive jurisdiction of the parties' child support order, and the trial court did not err in transferring jurisdiction over the order to the State of California.[13]

We affirm the judgment of the trial court.

MAY, J., and MATHIAS, J., concur.

---

**12.** Father expresses concern in his Reply Brief that members of the Armed Forces who are deployed or stationed in states other than Indiana for indefinite periods of time will not be considered residents of Indiana. Nothing in this opinion leads to such a result. Members of the military who leave Indiana but have a subjective intent to return upon leav-

ing the service remain domiciliaries of this State.

**13.** We encourage the General Assembly to revisit the language of Indiana Code § 31–18–2–5(a), given our conclusion that this subsection conflicts with federal law.