Nikhil DESAI, Appellant,

v.

Raechelle Desai FORE, Appellee.

Nos. 94–FM–1162, 94–FM–1163, 94–FM–1520, 95–FM–414, 95–FM–415, 95–FM–719, 95–FM–720, 95–FM–721.

District of Columbia Court of Appeals.

Argued March 12, 1998.

Decided April 30, 1998.

Noel W. Kane, for appellant.

Raechelle Desai Fore, pro se.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

In these consolidated appeals, it is undisputed that the Superior Court, Family Division, at an earlier time, awarded appellee custody of her two children; and that appellant, appellee's husband and father of the children, was granted visitation rights. Appellant was also ordered to pay child support. It is the latter order which provides the issues that we now review. After the order for support, appellant filed a number of motions challenging the continued validity of the underlying order, and of subsequent directives from the court seeking compliance. The present appeals stem from the trial court's denial of those motions.

Although there are issues raised with regard to the procedures followed in withholding wages when payments were not made by appellant, as well as contentions surrounding an adjudication of contempt, the central and primary issue presented for our review is whether a Superior Court order for child support, properly entered initially, loses its validity when, without more, either or both parents move out of this jurisdiction and reside elsewhere.

Being unpersuaded by appellant's contentions, we affirm the trial court's rulings.

## I.

Appellant and appellee were married on January 8, 1982, in the District of Columbia. Their two children were born in the District. Except for occasional periods abroad, the entire family resided in the District until 1988. On April 27, 1988, appellee and the two children moved to her parents' home in Arkansas. On June 20, 1988, appellant filed a complaint requesting custody of the children and on June 27, 1988, also filed an action seeking divorce. Appellee, while still residing in Arkansas, filed counter pleadings. In December 1988, appellant visited the children in Arkansas and returned to the District with them on January 1, 1989. Appellant and the children then moved to Virginia shortly after their return to the District.[1]

After a trial in Superior Court, Family Division, appellee, in March 1989, was awarded custody of the children; appellant was granted visitation rights. Appellant was also ordered to pay child support.[2] Appellee and the children returned to live in the District in the fall of 1989; however, in June 1993, she moved to Maryland with the children. She and the children later moved to Virginia in March 1997.

Following the 1989 ruling, the Clerk of the Court mailed orders to appellant's employer in Virginia, directing that portions of appellant's wages be withheld for child support. In May 1993, appellee initiated contempt proceedings because of appellant's failure to make the ordered payments. Appellant, in July 1993, moved to terminate child support effective June 1993, the date on which appellee and the children moved to Maryland. Additionally, he sought to quash an existing withholding order; later, in February 1994, he sought to vacate all withholding orders which might have been issued since 1989. In the latter motions, appellant asserted that the District lacked authority to serve his employer in Virginia with income withholding orders.

On June 7, 1994, the Honorable Paul R. Webber denied appellant's motions to vacate support, and motion to stop withholding of wages; he granted appellee's motion for a finding of contempt. Subsequent to these rulings, new orders of wage withholding were directed to appellant's employer in Virginia.[3]

---

1. At all times relevant to this case, appellant worked in Virginia and has never been employed in the District.

2. The couple later divorced in Arkansas.

3. Some of these orders were approved by the Honorable Evelyn E. Crawford Queen.

## II.

Appellant premises his challenge on the factual assertion, which is accurate, that since the initial entry of the order for child support, there have been periods of time, as now, where neither parent nor the children have resided in the District of Columbia. Thus, appellant's primary contention is that, under these circumstances, the District's courts have lost jurisdiction over questions of support and custody. We examine this contention in light of precedent, relevant statutes, and public policy.

Even before more recent legislation this court has held, in child custody and support cases, that *once* a court establishes valid personal and subject matter jurisdiction, final orders are effective and can be carried out in another state or jurisdiction. *See Beckwith v. Beckwith,* 355 A.2d 537, 540 (D.C.1976), *aff'd,* 379 A.2d 955 (1977), *cert. denied,* 436 U.S. 907, 98 S.Ct. 2239, 56 L.Ed.2d 405 (1978); *accord Darden v. Darden,* 144 A.2d 697, 699 (D.C.1958). Some cases, however, turn on whether jurisdiction was initially attained. *See Devoto v. Devoto,* 358 A.2d 312 (D.C.1976); *see also Richardson v. Richardson,* 276 A.2d 231 (D.C.1971).

Here, the trial court found that appellant filed his original claim for child custody in the District and resided in the District when the action commenced. Therefore, despite appellant's move to Virginia subsequent to commencement of this action, he had already subjected himself to personal jurisdiction. The court maintained this jurisdiction over appellant throughout the trial.[4]

The court further found that because the District was the home state [5] of the children prior to commencement of this action and appellant lived in the District during the same period, it had subject matter jurisdiction over the custody claim, pursuant to D.C.Code § 16–4503(a) (1997 Repl.).[6] It also noted, alternatively, that subject matter jurisdiction could be based on a finding that it was in the best interest of the children that the Superior Court assert jurisdiction. Additionally, the court concluded that D.C.Code § 16–916(c) [7] conferred subject matter jurisdiction over the child support issue, noting that once the court had a sufficient interest in the case to determine custody of the children, it was permitted to exercise jurisdiction over the child support issue.

Upon finding that it had both personal and subject matter jurisdiction, the trial court, following our decisions, concluded that its jurisdiction was not dependent on continued residence of the parties. Thus, the court reasoned that it retained authority to enforce the prior order.

---

4. The court cited Restatement (Second) Conflict of Laws § 26 (1971), and noted:

[O]nce a state obtains judicial jurisdiction over a party to an action, the jurisdiction continues throughout all subsequent proceedings which arise out of the original action.

5. D.C.Code § 16–4502(1) (1997 Repl.), part of the District's Uniform Child Custody Jurisdiction Act, provides in relevant part:

"Home state" means the state in which the child, immediately preceding the time involved, lived with his or her parents, a parent, or a person acting as parent for at least 6 consecutive months....

*Id.* Appellant's two children resided in the District for at least six consecutive months preceding commencement of this action, thus making the District their home state.

6. D.C.Code § 16–4503(a)(1) provides in relevant part:

(a) The Superior Court may exercise its jurisdiction to make a child custody determination ... if

(1) The District ... (B) has been the child's home state within 6 months before commencement of the proceeding and the child is absent from the District because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as a parent or person acting as parent continues to live in the District; [or]

(2) It is in the best interest of the child that the Superior Court assume jurisdiction because (A) the child and his or her parents, or the child and at least one petitioner, have a significant connection with the District, and (B) there is available in the District substantial evidence concerning the child's present or future care, protection, training, and personal relationships....

*Id.*

7. D.C.Code § 16–916(c) provides in relevant part:

(c) When a father or mother fails to maintain his or her minor child, the Court may decree that the father or mother pay reasonable sums periodically for the support and maintenance of the child....

■ In an age where family residential patterns are increasingly more transient, appellant's argument is founded more on adversarial concerns and less on the parental obligation to provide for the financial needs of their children. Contrary to appellant's position, newer legislative enactments, in recognition of more ambulatory family patterns, have recognized the need to control noncompliance with support decrees as a result of frequent relocations. Specifically, the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"),[8] and the Uniform Child Custody Jurisdiction Act ("UCCJA")[9] address the need to create uniformity among the states with respect to initial and modified child custody and support decrees, as well as enforcement of the decrees. Such uniformity prevents unwarranted competition among the states, avoids conflicting orders, and insures against substantial hardship for the children.

In sum, we can find no viable public interest to support appellant's view that a court with initial jurisdiction over a question of child support should, without more, lose authority to enforce the decree if both parents move to other jurisdictions. To conclude otherwise would deprive a court of meaningful ability to enforce its orders when nothing has changed except the residence of one or both parents. Understanding the existing remedy available to both parents to seek modification of an existing support order, based on changed circumstances, we conclude the trial judge did not commit error in ruling that its jurisdiction continued in the present circumstances.

### III.

Appellant's remaining contentions address the procedural enforcement of the support order and therefore depend, in large measure, upon our resolution of the question of the continued jurisdiction of the trial court.

### (A)

Appellant contends the District could not enforce the court's order by direct interstate service of income withholding orders upon his employer in Virginia. This assertion draws some support from the pertinent statute:

§ 30–523. Initiation of withholding in other jurisdictions.

Where an obligor under an order of support ... derives income in another jurisdiction, any caretaker, custodian, responsible relative, or the Mayor may file an application requesting the Clerk of the Court to request the appropriate agency in the other jurisdiction to issue a notice or order to withhold that income. (Feb. 24, 1987, D.C. Law 6–166, § 24, 33 DCR 6710.)

■ The trial judge confronted this argument directly. He noted the sum of unpaid support had accumulated over time to an amount exceeding $40,000. Appellant received numerous notices of intent to withhold his wages and did not object. In rejecting the challenge, the court characterized the withholding, if error, as harmless.

We agree. Appellant had fair notice of the ministerial directives to effect withholding. There is no showing, as to the merits of his obligation, that he was required to pay more than the ordered amount; nor is there any indication that, as a result of the method of withholding, appellant suffered any substantive detriment. Accordingly, we conclude appellant was afforded due process and has not demonstrated reversible error.

### (B)

Appellant also urges that the adjudication of contempt for his failure to make the ordered payments should be vacated as criminal in nature.

[4] It is settled that a court has discretion to adjudicate a person in contempt of court for wilful failure to obey an order of child support where the contemnor has the financial ability to comply. *See Langley v. Kornegay,* 620 A.2d 865, 866 (D.C.1993); *Smith v. Smith,* 427 A.2d 928, 931–32 (D.C. 1981). The essential difference between criminal and civil contempt is that the latter is remedial in nature. In that circumstance

---

8. 28 U.S.C. § 1738B (1997).

9. D.C.Code §§ 16–4501 to –4524 (1997 Repl.).

the contemnor has the means to have the sanction lifted by complying with the court's order. In non-support cases, the sanctions imposed generally are accompanied by a purge clause, premised on ability to pay. *Langley v. Kornegay, supra,* 620 A.2d at 867.

■ In this instance, the trial judge made a specific finding that appellant had the financial ability to support his children. The judge also ordered that appellant could purge himself of sanctions by paying a portion of the arrearage. Applying these concepts to the circumstances, we conclude that appellant's challenge in this regard is unavailing. We hold the adjudication of contempt was civil in nature.

**(C)**

■ Lastly, appellant challenges his arrest in Virginia on the authority of a warrant issued by the Superior Court. Relying upon D.C.Code § 23–563(b), he points out a warrant issued for "an offense punishable by imprisonment for not more than one year" must be served in the District. Because the adjudication of contempt was civil and therefore remedial in nature, potential sanctions which appellant faced in this case, depending upon evolving circumstances, and the exercise of the judge's discretion, could well have exceeded imprisonment for more than one year. Moreover, to follow appellant's argument to its conclusion, even if we were to assume that the execution of the warrant was invalid, we are constrained to observe that an illegal arrest does not generally deprive a court of jurisdiction. *Cf. United States v. Crews,* 445 U.S. 463, 473, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980); *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Accordingly, we reject this contention as a basis for reversal.

For the foregoing reasons we conclude that the trial court did not err in finding that the District maintained continuing jurisdiction to enforce its child support order, and that the income withholding orders mailed directly to appellant's employer were valid, as was the adjudication of contempt. We find no reversible error stemming from appellant's arrest.

*So ordered.*

**In re J.D.W.**

**J.G. and A.G., Appellants.**