Daniel LÓPEZ, Appellant,

v.

Elizabeth YSLA, Appellee.

No. 96–FM–438.

District of Columbia Court of Appeals.

Argued April 29, 1999.

Decided July 15, 1999.

Daniel M. López, pro se.

Erin P. Band, for appellee.

Before TERRY, STEADMAN and RUIZ, Associate Judges.

RUIZ, Associate Judge.

This appeal arises from the trial court's dismissal of appellant Daniel López's motion to reduce child support and its order holding López in civil contempt for failure to pay child support. López claims that the trial court abused its discretion in dismissing his motion and in holding him in contempt. After a review of the record, we reverse the trial court's dismissal of López's motion to reduce child support and remand for a hearing to determine whether López did in fact make child support payments to Barbara Kolb between July

1994 and June 1995. As for the civil contempt order, because there is no certified transcript of the complete proceedings before Judge Greene on March 1, 1996, we are unable to review the order on the present record.[1] We, therefore, instruct the parties to pursue the preparation of a statement of proceedings and evidence. See D.C.App. R. 10(d) (1999).[2] We note, however, that if the unofficial portion of the transcript provided by Ysla as an appendix to her brief on appeal is an accurate representation of the March 1, 1996 proceedings, we discern no abuse of discretion in the trial court's decision to hold López in civil contempt for failure to pay child support for the period of June 1995 to February 1996.

## I.

On August 13, 1993, Daniel López was ordered to pay $110 bi-weekly in child support to Elizabeth Ysla for the maintenance of their daughter.[3] López filed a motion to reduce child support on April 25, 1994, arguing that he was entitled to a downward adjustment in his child support payments to Ysla based on the child support he paid to Barbara Kolb, the mother of his three older children. After a modification hearing on July 7, 1994, the trial court denied his motion on the ground that López had failed to show a consistent child support payment record. In a written order dated July 14, 1994, the court indicated

1. López had properly designated the full transcript to be included in the record on appeal. On May 6, 1999, this court ordered the parties, within twenty days of the date of the order, to make the necessary arrangements to supplement the record on appeal with a certified transcript of the complete proceedings held before Judge Greene on March 1, 1996. In subsequent status reports to this court, both parties indicated that their inquiries to the trial court regarding the missing portion of the March 1, 1996 transcript have been unavailing.

2. D.C.App. R. 10(d) states in pertinent part:
   (1) Preparation. In extraordinary circumstances, with special leave of this court, the

appellant may prepare a statement of the proceedings and evidence from the best available means, including the recollection of counsel, in lieu of the reporter's transcript. The statement shall include such portions of the proceedings and evidence as are necessary to present fully and clearly the rulings of the trial judge in which error is claimed.

3. The $110 was calculated according to the Child Support Guidelines, see D.C.Code § 16-916.1 (1997), and was based on López's annual gross income of $26,000 and Ysla's annual gross income of $52,000.

the conditions under which López might file another modification motion, stating:

> As the Court indicated at the July 7 hearing, should plaintiff establish a consistent record of child support payments to Ms. Kolb by making such payments into the Court Registry for at least five months, he could file another motion seeking a reduction for child support paid to the Kolb children, but in the absence of such a record, this Court would be unwilling to entertain another motion regarding this issue.[4]

López did not appeal from the trial court's denial of his first motion to reduce child support payments.

Two weeks later, López filed a second motion to reduce child support, requesting a hearing on or about January 1, 1995 and asking that the court make any reduction retroactive to the July 29, 1994 filing date.[5] A year and a half later, on February 14, 1996, the trial court summarily denied the motion on the ground that it was a "frivolous" attempt to relitigate the same issue that had been presented in his first motion

to reduce child support and denied by the court. The court further noted that it discredited López's claim that he had permission to refile his motion before he had established a consistent payment record.[6]

On December 7, 1995, Ysla filed, *inter alia,* a motion to hold López in contempt for failure to pay child support.[7] At the February 14, 1996 hearing, after denying appellant's second motion to reduce child support, the trial court then considered the contempt motion, continuing the hearing to March 1, 1996. After determining that López was in arrears on his child support obligations in the amount of $2,310 and that appellant had "willfully failed to pay any child support since June 12, 1995, notwithstanding his financial ability to do so," the trial court held López in contempt of court, sentenced him to sixty days in prison, and stayed the sentence upon condition that he make bi-weekly $135 payments.[8]

López appeals from the denial of his second motion to reduce support and from

---

**4.** López had been unable to present evidence corroborating his payments to Barbara Kolb other than spreadsheets which she maintained. The trial court found that "Ms. Kolb and [López] have recently engaged in a questionable business transaction which appears to have been structured so as to shield the plaintiff from his creditors, or alternatively, to reduce his net worth," and that the method used to pay child support was of a "highly suspicious nature."

**5.** *See* D.C.Code § 30–504(c) (1998) (no modification of a child support award may be retroactive, except that a "modification may be permitted for the period during which a petition for modification is pending").

**6.** López contends that at the close of the July 7, 1994 hearing, he had inquired about filing a new motion immediately so that any future reduction ordered by the trial court would be retroactive to the filing date. The court approved the early filing, according to López, but informed him that no hearing would be held until he had established a consistent payment record. On appeal, Ysla denies that this colloquy between the trial court and López ever occurred, and there is no evidence of this conversation in the record. At the Febru-

ary 14, 1996 hearing, Ysla's lawyer recognized, however, that the trial judge who denied López's first motion to reduce "invited Mr. López to refile his motion if he wanted to, as long as he could provide some proof that he was actually paying this other child support."

**7.** According to the record, López made no child support payments to Ysla between June 12, 1995, when the trial court denied his first motion to reduce child support, and March 25, 1996, after the trial court denied his second motion to reduce and found him in contempt.

**8.** The trial court's original order of March 4, 1996 provided that López was ordered "to the District of Columbia Jail for a period of 60 days or until such earlier time as he shall purge himself of his contempt by paying to the Registry of the Court the sum of $2,310," the amount by which López was in arrears in his child payments to Ysla. In an order entered March 19, 1996, the trial court facilitated López ability to purge himself of the contempt, by permitting López to pay the arrears in $25 installments in addition to his $110 bi-weekly support payment, and set the matter for review on June 3, 1996.

the order holding him in contempt of court for failure to pay child support.

## II.

### 1. *Motion to reduce child support.*

■ López argues that the trial court abused its discretion by denying his second motion to reduce child support without considering his support payments for his other children since the denial of his first motion to reduce child support. Under the District of Columbia Code, a child support order may be modified upon a showing that there has been a "substantial and material change" in a party's ability to pay since the order was issued. *See* D.C.Code § 30–504(a) (1998); *see also* D.C.Code § 16–916.1(*o*)(10) (1997) (party may move to modify a child support order at any time). When a party seeks to modify an existing child support order, the trial court must conduct a hearing, make a finding, and enter a judgment pursuant to the child support guideline. *See* D.C.Code § 16–916.1(a). Whether a child support order should be modified is a question committed to the sound discretion of the trial court, and this court will not reverse absent a clear showing of abuse of discretion. *Burnette v. Void,* 509 A.2d 606, 608 (D.C.1986) (citation omitted).

In this instance, the trial court did not conduct a full evidentiary hearing on López's motion to reduce his child support payments to Ysla, despite López's repre-sentations that he had documentation showing that he had made child support payments to Barbara Kolb, the mother of his three older children, between July 1994 and June 1995.[9] Instead, the trial court summarily denied López's second motion based on its belief that the motion, filed two weeks after the trial court's July 14, 1994 order denying López's first motion to reduce child support, was a "frivolous" attempt to relitigate the same issue. However, as López explained at the hearing, he filed the second motion soon after his first motion was denied in an attempt to ensure that any future reduction would be retro-active to the second motion's filing date of July 29, 1994.[10] See *supra* notes 6 and 7. This claim is supported by the language of the second motion, in which López recog-nizes the condition under which the trial court would be willing to entertain another motion to reduce, namely that he establish a consistent payment record of at least five months, but asks the court to make any future reduction retroactive to the July 29, 1994 filing date. In addition, in his second motion López requested a hearing on or about January 1, 1995, approximately five months from the motion's July 29, 1994 filing date.

■ We consider it immaterial wheth-er or not the trial judge "authorized" Ló-pez to file a second motion to reduce child support. Court permission is not usually necessary before a litigant may seek judi-cial redress contemplated by law. Here,

---

9. After the trial court noted that Judge Hu-velle denied López's first motion to reduce child support because he did not provide suf-ficient evidence that he had in fact made child support payments to Kolb, López stated, "I have the proof, in writing, photostat copies of the support that I have paid." Later, López expressed frustration that he was unable to prove that he had made payment to Kolb even though he had the documents at the hearing. When asked about his earnings, López re-sponded, "I make a little bit of money, but I have a record here of what I pay for my children."

10. We take no position on whether any re-duction of child support, if granted, would necessarily be retroactive to the filing date. Although López maintains that he received permission from the trial judge in open court to file his second motion prior to the expira-tion of the five month period, with the under-standing that it would not be heard for at least five months, the trial court's July 14, 1994 order does not reflect this agreement. The order states only that López may file another motion seeking a reduction for any child support paid to the Kolb children only after showing "a consistent record of child support payments to Ms. Kolb by making such payments into the Court Registry for at least five months ...."

there was no prohibition on further filings, but rather a judicial cautionary note indicating that further motions to reduce would also be denied unless López proved his claim of competing child support payments by presenting a record of consistent payment of such other child support. In any event, the hearing on López's second motion was not in fact held until March 1, 1996, eighteen months after the motion was filed. At that hearing, the burden of proving changed circumstances was on López, as the party seeking modification. *See Guyton v. Guyton,* 602 A.2d 1143, 1145 (D.C.1992). The record supports that the trial court did not permit López to provide proof of changed circumstances based, apparently, on a misunderstanding regarding the basis for López's second motion. Although there is no doubt that the second motion was filed before López had established the required payment record, López appears to have renewed his motion immediately after the court's denial of his first motion to preserve his right to a retroactive reduction in payments, *see* D.C.Code § 30–504(c) (modification may be permitted for the period during which a petition for modification is pending), and stated that he was prepared, when the hearing was held eighteen months later, to prove his child support payments to Kolb. Therefore, we conclude that the trial court abused its discretion in denying López's second motion to reduce child support without first considering his alleged proof of child support payments between July 1994 and June 1995.[11]

2. *Motion for civil contempt for failure to pay child support.*[12]

López contends that the trial court also abused its discretion by finding him in contempt absent sufficient evidence of his ability to pay.[13] "It is settled that a

11. López also appears to allege trial court error by noting that his motion to reduce child support was pending before the court for eighteen months, while appellee's motion for contempt covered only an eight-month period. However, he neither explains why this ten-month disparity necessarily reflects error on the part of the trial court, nor offers any evidence to substantiate this claim.

12. López contends that, because he was held in criminal contempt, the trial court's findings required "clear and convincing evidence." While appellant correctly states the legal standard for civil contempt, he incorrectly asserts that he was held in criminal rather than civil contempt. The offense of criminal contempt requires proof, beyond a reasonable doubt, of two elements: "[a] contemptuous act and a wrongful state of mind." *Mabry v. Demery,* 707 A.2d 49, 51 (D.C.1998) (citing *In re Gorfkle,* 444 A.2d 934, 939 (D.C. 1982)). In contrast, to establish civil contempt, the complainant must prove, by clear and convincing evidence, that the alleged contemnor was subject to the terms of a court order, and that he violated the order. *See D.D. v. M.T.,* 550 A.2d 37, 43–44 (D.C.1988) (citations omitted). Whereas criminal contempt is a sanction imposed "to punish a contemnor for intentionally violating a court order," civil contempt is "remedial in nature," designed to enforce compliance with a court order or to compensate for any loss or damage sustained as a result of noncompliance. *See Mabry, supra,* 707 A.2d at 51 (citations omitted). Our review of Ysla's motion for contempt, requesting that López "be held in contempt and held until he pays the child support arrearage," and the trial court's order finding López able to pay the arrears and permitting him to purge the 60–day sanction, see note 8, *supra,* leads us to conclude that both the motion and order were remedial in nature and, thus, that López was held in civil contempt. *See* D.C.Code §§ 16–911, –912 (1997); *Desai v. Fore,* 711 A.2d 822, 825–26 (D.C.1998) (contempt is civil in nature where contemnor has means to have sanction lifted by complying with court's order); *see also Smith v. Smith,* 427 A.2d 928, 931–32 (D.C. 1981) (court may hold debtor in civil contempt to force compliance with support order, but may impose "severe sanction" of imprisonment only upon "a finding that the [debtor] is able to pay the debt owed") (citations omitted).

13. According to the record, Ysla filed a motion for contempt because López stopped making child support payments as of June 1995. At the contempt hearing, López admitted that he had not paid since June 1995 and asserted the defense of inability to pay due to his alleged limited income. He was questioned regarding his income and expenses since June 1995. Because Ysla's claim for child support arrearages began in June 1995, no evidence was elicited as to López's income or expenses prior to that date, nor is such evidence relevant to the contempt determina-

court has discretion to adjudicate a person in contempt of court for wilful failure to obey an order of child support where the contemnor has the financial ability to comply." *Desai, supra* note 12, 711 A.2d at 825 (citations omitted); *see also Hoffman v. Hoffman,* 210 A.2d 549, 550 (D.C.1965) ("court may enforce a father's obligation to support his minor children only commensurate with his financial ability to pay") (quotations and citation omitted). Ability to pay is "not merely a function of actual earnings but is to be derived, more broadly, from earning capacity in the current job market, given one's educational background and work experience." *Freeman v. Freeman,* 397 A.2d 554, 556 (D.C.1979). When faced with a contempt motion for noncompliance with a support order, the defendant bears the burden of showing inability to pay. *See Smith, supra* note 12, 427 A.2d at 932 (citations omitted).

■ We note first that the record before us on appeal is incomplete due to the fact that a portion of the official transcript of the March 1, 1996 hearing, containing the trial court's findings of fact and conclusions of law, is unavailable, apparently through no fault of the parties. See *supra* note 1. Absent the complete transcript, we are unable to review the trial court's March 1, 1996 ruling granting appellee's

motion for contempt. We, therefore, direct the parties' attention to D.C.App. R. 10(d) which outlines the conditions under which, by special leave of this court, a party may prepare and submit a statement of proceedings and evidence in lieu of an official transcript to enable appellate review. We further note, however, that should the parties and the trial court agree that the unofficial portion of the March 1, 1996 transcript, attached to appellee's brief on appeal, is an accurate statement of the proceedings, we discern no abuse of discretion in the trial court's decision to grant the contempt motion for the reasons that follow.

■ The trial court explicitly found that López had the financial ability to make child support payments, but failed to do so. Assuming that the official transcript of the March 1, 1996 hearing is as presented in the attachment to Ysla's brief, this finding is supported by López's testimony which suggested that he actually earned more than his reported gross income,[14] as well as certain statements which indicated that, on months where he had few business expenses, he failed to pay child support.[15] In particular, the trial court questioned López's decisions to pay other debts rather than cover his child support obligations.[16]

---

tion. In short, López's motion to reduce child support payments and Ysla's motion for contempt for nonpayment of child support cover different, but overlapping, time periods.

14. For example, at the March 1, 1996 hearing, López testified that he earned $590 gross income in July 1995, but had $545.82 in business expenses, leaving a net income of just under $45. In August 1995, he earned $1,161 gross income, but used $1,100 to pay a phone bill, leaving a net income of $61. However, appellant also testified that his monthly rent for office space in July and August 1995 ranged from $478 to $550 and that, when his company vacated the office space in September 1995, he owed no rent. In addition, at the February 14, 1996 hearing, López indicated that from June to August 1995, he paid a total of $1,000 in rent. Because his net income for July–August 1995 was $106, it is unclear how López was able to pay rent for both his home and his business during the

same time period. López did testify, however, that the $900 payment he made to an employee in August 1995 was borrowed money.

15. López testified that he earned a gross income of $1,043 in November 1995, $1,243 in December 1995 and $722 in January 1996, but offered little evidence of any significant business expenses during this time period which would have prevented him from paying child support.

16. In August 1995, López reported $1,161 in gross income, but paid a $1,100 phone bill, rather than covering at least part of his child support obligation. In addition, appellant's 1995 tax return reflected gross business receipts of $74,620. The trial court recognized that López's reported net income was only $14,840, but noted that López allegedly deducted $38,000 to pay other persons, but paid nothing in child support.

Although López complains that the trial court overestimated his limited net income during the relevant time period, the trial court's findings in the unofficial transcript, if verified, are supported by the record. *See Smith, supra* note 13, 427 A.2d at 932. Moreover, based on the unverified record, the trial court's determination that López was not a credible witness is not clearly erroneous. *See Johnson v. United States,* 616 A.2d 1216, 1234 (D.C.1992), *cert. denied,* 507 U.S. 996, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993) (noting deference to the trial court's credibility determinations respecting witnesses who testify). Finally, the trial court determined that, whatever López's actual income might be, he had the ability to meet his "fundamental obligation to go out and earn money and support these children." [17] We conclude, on the basis of the unofficial transcript, that there is clear and convincing evidence supporting the trial court's finding that López violated a support order that he had the ability to pay. Thus, the trial court did not abuse its discretion in holding López in civil contempt for noncompliance with the support order, but staying execution of the order on the condition that López meet his payment obligations. *See Smith, supra* note 12, 427 A.2d at 932 ("A court may order commitment for contempt but stay imprisonment on the condition of compliance with reasonable, specific requirements.")

For the foregoing reasons, we remand to the trial court for a hearing on López's motion to reduce, at which time López may present evidence in support of his claim that he made consistent child support payments to Barbara Kolb between July 1994 and June 1995 and any other evidence necessary to justify his claim for a reduction in child support payments. Absent an official transcript of the trial court's March 1, 1996 ruling, we also remand on the contempt issue to give López, in conjunc-

tion with Ysla and the trial court, the opportunity to prepare a statement of the proceedings.

*Reversed and remanded.*

---

**17.** The trial court also took issue with López's view that his visitation obligations took priori-ty over his obligation to support his children.