**Mary Connole DeGROOT, Appellant**

v.

**Ernst W. DeGROOT, Appellee.**

**No. 06–FM–311.**

District of Columbia Court of Appeals.

Argued Sept. 5, 2007.
Decided Jan. 3, 2008.

Laird Hart, with whom Paul A. Ainsworth, Washington, DC, was on the brief, for appellant.

Louis Fireison, with whom Vincent T. Lyon, Bethesda, MD, was on the brief, for appellee.

Before WASHINGTON, Chief Judge, FISHER, Associate Judge, and NEWMAN, Senior Judge.

FISHER, Associate Judge:

Appellee Ernst DeGroot divorced appellant Mary Connole [1] in August 1999 in the District of Columbia. In December 2005, after the parties and their children moved away from the District, Ms. Connole asked the Superior Court to modify the divorce decree to include an order of child support. The trial court denied the motion, concluding that it lacked subject matter jurisdiction because neither the parents nor their children reside in the District.

We hold that the court had continuing subject matter jurisdiction to enter an order for child support. The doctrine of continuing jurisdiction has a long history in the District, and it has been codified. *See* D.C.Code § 16–914.01 (2007 Supp.). Nothing in the enactment of the Uniform Interstate Family Support Act of 1996 ("UIFSA"), *see* D.C.Code §§ 46–301.01 to

---

1. On January 6, 2006, the Superior Court corrected a typographical error in the divorce decree to restore Mary Connole DeGroot to her former name—Mary Margaret Connole.

46–309.01 (2001 & 2007 Supp.), altered the power of the court to hear this case. We reverse and remand for further proceedings.

## I. Factual and Procedural Background[2]

Mary Connole married Ernst DeGroot in November 1984 in the District of Columbia. The couple had two children, both of whom were born here. After living outside of the District for a few years, the family moved back to this jurisdiction, but the parents separated in 1997.

Mr. DeGroot divorced Ms. Connole in August 1999. The divorce decree awarded Ms. Connole "permanent custody" of the couple's minor children, and the Superior Court granted Mr. DeGroot "reasonable rights of visitation." Neither party asked the court to order child support. Rather, the decree provided that "[t]his issue shall remain open [i]f either party elects to seek such relief in the future." Mr. DeGroot's attorney sent a letter to Ms. Connole (who was then Mrs. DeGroot) in April 1999, confirming that the couple had "decided between [them]selves about the arrangements for support."

After the separation, Ms. Connole moved with the children to Maryland; Mr. DeGroot later moved to the Commonwealth of Virginia. Neither Ms. Connole, nor Mr. DeGroot, nor either of the children presently lives in the District.

Mr. DeGroot regularly provided child support to Ms. Connole starting in 1998. Although the amounts varied in the early years after the separation, from February 2000 until September 2004, Mr. DeGroot paid six hundred dollars to Ms. Connole every month. In September 2004, shortly before the older child turned nineteen, Mr.

DeGroot unilaterally reduced his child support payments to three hundred dollars per month.

In December 2005, Ms. Connole filed in the Superior Court a Motion to Modify Judgment of Absolute Divorce by Clarifying Clerical Error and Awarding Child Support. Mr. DeGroot opposed the modification, and the Superior Court held a status hearing on February 15, 2006. When it discovered that the parties and the children no longer resided in the District, the trial court raised *sua sponte* the question of its subject matter jurisdiction to adjudicate the issue of child support.

After accepting briefs on the jurisdictional issue, the trial court denied the motion to modify judgment, ruling that it lacked subject matter jurisdiction. (Mr. DeGroot did not challenge the court's jurisdiction over his person.) Concluding that UIFSA governed its jurisdiction in the matter, the court held that, in order for it "to have jurisdiction to enter a child support order, one of the relevant parties, *i.e.*, the obligee, the obligor, or the children, must reside in the District of Columbia." Because none of these persons resided in the District, the court denied Ms. Connole's motion. This appeal followed.

## II. Discussion

■ "The issue of subject matter jurisdiction is a question of law. Therefore, our standard of review is *de novo*." *American University in Dubai v. District of Columbia Education Licensure Comm'n*, 930 A.2d 200, 207 n. 17 (D.C.2007).

### A. The Doctrine of Continuing Jurisdiction

The District of Columbia long ago accepted "the general doctrine of the courts of the United States . . . that jurisdiction

---

**2.** Many of these facts are taken from the affidavit of Ms. Connole. At this stage of the proceedings, we view the facts in the light most favorable to the non-moving party.

over the custody and support of children in divorce cases is a continuing one...." *Demonet v. Burkart,* 23 App.D.C. 308, 315 (1904); *see also Clark v. Clark,* 485 A.2d 621, 622–23 (D.C.1984) (citing prior cases for the proposition that "D.C.Code § 16–914 gives [the] trial court continuing jurisdiction over issues of custody and child support even where the decree is silent as to custody or child support"); *Alves v. Alves,* 262 A.2d 111, 117 (D.C.1970) ("The jurisdiction acquired by the trial court in a proceeding for divorce is one of continuing jurisdiction over the issues of custody and child support. This is true even though the decree is silent as to custody or child support." (footnotes omitted)); *Trotter v. Trotter,* 87 U.S.App.D.C. 213, 213, 183 F.2d 997, 997 (1950) ("The continuing jurisdiction of a court of equity in such circumstances [where the divorce decree is silent as to custody and support] to deal with the custody and maintenance of a minor child is well established."); *Elkins v. Elkins,* 55 App.D.C. 9, 11, 299 F. 690, 693 (1924) ("[I]t has become the established practice in divorce cases for courts, after a final decree for divorce and alimony, to make suitable orders in the same case for the maintenance of the minor children of the parties.").

■ Mr. DeGroot argues that because the original divorce decree contained no express provision for child support the Superior Court cannot now add one. This is not correct. Continuing jurisdiction includes the power to issue a child support order even though the initial divorce decree is silent on the matter. *See Alves v. Alves,* 346 A.2d 736, 738 (D.C.1975) ("We do not view the absence of a prior court order as a bar to trial court consideration on the merits of a motion to increase support for the son."); *see also Elkins,* 55 App.D.C. at 11, 299 F. at 693 ("in cases wherein the decree is simply for divorce,

alimony, and custody in the mother, the court may afterwards add an order for the father to furnish maintenance").

*Clark* dealt with a plaintiff who returned to Superior Court, seeking to reduce arrearages to judgment several years after the court had entered a final judgment for absolute divorce. 485 A.2d at 622. The arrearages had accrued under a separation agreement that had not been incorporated and merged into the judgment for absolute divorce, or ratified by the court in the initial judgment. *Id.* The trial court dismissed the plaintiff's motion to modify the decree, concluding that it lacked subject matter jurisdiction because the original divorce action did not "adjudicate any issue as to support or maintenance and the Final Order was silent as to support and maintenance...." *Id.* Reversing, this court dealt with the jurisdictional issue by simply reaffirming the "power of the court to make orders for support when the judgment for divorce is silent on support and does not incorporate the separation agreement." *Id.*

No case of this court suggests that subject matter jurisdiction to issue a support order expires if all the parties have left the jurisdiction. Addressing the issue of continuing jurisdiction to *enforce* a support order, we have rejected the "view that a court with initial jurisdiction over a question of child support should, without more, lose authority to enforce the decree if both parents move to other jurisdictions." *Desai v. Fore,* 711 A.2d 822, 825 (D.C.1998). In *Desai,* the plaintiff asked the Superior Court to enforce a child support order after all the parties had moved away from the District. *Id.* at 823. The Superior Court concluded that its "jurisdiction was not dependent on continued residence of the parties." *Id.* at 824. This court affirmed, holding that "[t]o conclude otherwise would deprive a court of meaningful

ability to enforce its orders when nothing has changed except the residence of one or both parents." *Id.* at 825.

In *Elkins,* the mother sought to increase an allowance for maintenance of their child after the father had moved to New Jersey. Although the court granted an increase, the father failed to comply, and he later challenged the jurisdiction of the court. Discussing both personal and subject matter jurisdiction, the court of appeals concluded that "the defendant was subject to the jurisdiction of the court. . . ." 55 App. D.C. at 10–11, 299 F. at 692–94. The trial court had acquired jurisdiction when the suit was begun, and "[t]hat jurisdiction continued so long as was necessary to make effective the court's orders and decrees in the determination of the [custody, care, and maintenance of the child.]" *Id.* at 10, 299 F. at 693.

Mr. DeGroot acknowledges that he "has not challenged the personal jurisdiction of the court regarding modifying the divorce decree." Instead, he asserts that the trial court lacks subject matter jurisdiction to modify that judgment by adding an order for child support. He suggests that *Elkins* addressed only an issue of personal jurisdiction. As we have indicated, however, the court discussed principles of continuing subject matter jurisdiction, not simply personal jurisdiction. *Elkins,* 55 App.D.C. at 11, 299 F. at 693. Even if *Desai* is properly understood as dealing only with enforcement, not amplification, of a court order, Mr. DeGroot offers no reason why its underlying principles should not guide us here. To the contrary, we find the court's reasoning enlightening: "[W]e can find no viable public interest to support [the] view that a court with initial jurisdiction over a question of child sup-

port should, without more, lose authority to enforce [or modify] the decree if both parents move to other jurisdictions." *Desai,* 711 A.2d at 825. Ultimately, however, this case turns on whether the legislature has limited the reach of continuing jurisdiction.

## B. Statutory Grants of Subject Matter Jurisdiction

■ The Superior Court is "a court of general jurisdiction," *Andrade v. Jackson,* 401 A.2d 990, 992 (D.C.1979), but its subject matter jurisdiction has from time to time been expanded or contracted by statute. D.C.Code § 11–921(a) (2001) provides that "the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia." The Family Court, a division of the Superior Court, has "jurisdiction over . . . actions for divorce . . . including proceedings . . . for support and custody of minor children." D.C.Code § 11–1101(a)(1) (2001 & 2007 Supp.). Thus, our statutes expressly grant subject matter jurisdiction over actions for divorce and child support.

The legislature has limited the jurisdiction of the Superior Court to grant divorces and to determine child custody. For example, "[n]o action for divorce or legal separation shall be maintainable unless one of the parties to the marriage has been a bona fide resident of the District of Columbia for at least six months next preceding the commencement of the action." D.C.Code § 16–902 (2001). Moreover, "a court of the District has jurisdiction to make an initial child-custody determination only" under circumstances described in D.C.Code § 16–4602.01(a) (2007 Supp.).[3]

---

**3.** D.C.Code § 16–4602.01(a) provides:

§ 16–4602.01. **Initial child-custody jurisdiction.**

(a) Except as otherwise provided in section 16–4602.04, a court of the District has juris-

Except, perhaps, for UIFSA, which we will discuss shortly, no comparable provision of the D.C.Code limits the authority of the Superior Court to issue orders for child support.

Indeed, the Council of the District of Columbia has codified the doctrine of continuing jurisdiction with respect to entering or modifying child support orders. D.C.Code § 16–914.01 (2007 Supp.) states that "[a]fter the issuance of a judgment, decree, or order granting custody, child support, or alimony, the Court retains jurisdiction for the entry of future orders modifying or terminating the initial judgment, decree, or order to the extent the retention of jurisdiction does not contravene other statutory provisions." Here, of course, the divorce decree granted Ms. Connole custody of the children.

This court has not yet addressed the reach of § 16–914.01, which was enacted by D.C. Law 14–207 (effective October 19, 2002). However, we have interpreted an earlier version of the statute to grant continuing jurisdiction to make orders for support where the original divorce decree was silent on that topic. *Clark*, 485 A.2d at 622–23 (citing *Alves*, 262 A.2d at 117, for proposition that "D.C.Code § 16–914 gives [the] trial court continuing jurisdiction over issues of custody and child support even where the decree is silent as to custody or child support"). We see no evidence that by enacting § 16–914.01 the Council intended to curtail the continuing jurisdiction of the court. If anything, the revised language was intended to make that jurisdiction even more clear.[4]

## C. The Impact of UIFSA

We turn now to assess whether—in the words of D.C.Code § 16–914.01—"retention of jurisdiction" under these circumstances would "contravene other statutory provisions"—in this case UIFSA. "Contravene" is a strong word, defined as "[t]o violate or infringe; to defy" or "to be contrary to." BLACK'S LAW DICTIONARY 352

diction to make an initial child-custody determination only if:

(1) The District is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from the District, but a parent or person acting as a parent continues to live in the District;

(2) A court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that the District is the more appropriate forum under sections 16–4602.07 or 16–4602.08, and:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with the District other than mere physical presence; and

(B) Substantial evidence is available in the District concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of the District is the more appropriate forum to determine the custody of the child under sections 16–4602.07 or 16–4602.08; or

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3) of this subsection.

4. The 2002 revision replaced language which stated that "[a]fter the issuance of a decree of divorce granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders." D.C.Code § 16–914(a)(1) (2001). The Committee Report to the Council explains that the new provision "builds on" earlier language and "allows the court to maintain jurisdiction over the custody, child support or alimony decree." COUNCIL OF THE DISTRICT OF COLUMBIA COMMITTEE ON THE JUDICIARY, REPORT ON BILL 14–635, THE "DOMESTIC RELATIONS LAWS CLARIFICATION ACT OF 2002," at 3 (May 29, 2002).

■■■■■■■■■■■■■■

(8th ed. 2004). These definitions are consistent with our general rules of statutory interpretation. " '[W]hen two statutes are *capable* of co-existence, it is the duty of the courts, absent a clearly expressed [legislative] intention to the contrary, to regard each as effective.' " *United States Parole Comm'n v. Noble,* 693 A.2d 1084, 1087 (D.C.1997) (quoting *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (emphasis added in *Noble*)), *opinion adopted in United States Parole Comm'n v. Noble,* 711 A.2d 85, 86 (D.C.1998) (en banc). *See also George v. Dade,* 769 A.2d 760, 764 (D.C.2001) ("[O]ur task is to reconcile [statutes], if possible."). Thus, D.C.Code § 16–914.01, and our prior case law, authorized the Superior Court to modify the divorce decree to include an order for child support unless UIFSA precludes it.

■ Codified at D.C.Code §§ 46–301.01 to 46–309.01 (2001),[5] UIFSA attempts to clarify the methods of "establishment, enforcement, or modification of support orders across state lines." *LeTellier v. LeTellier,* 40 S.W.3d 490, 493 (Tenn.2001).

*Accord, Hamilton v. Foster,* 260 Neb. 887, 620 N.W.2d 103, 114 (2000) ("The general purpose of UIFSA is to unify state laws relating to the establishment, enforcement, and modification of child support orders."). One goal of UIFSA is to establish a "one-order system" so as to avoid the problems of multiple and conflicting support orders that arose under the previous regime, the Revised Uniform Reciprocal Enforcement of Support Act. *See* UNIF. INTERSTATE FAMILY SUPPORT ACT, prefatory n.II.B.3 (1996), 9 U.L.A. 287 (2005). As the prefatory note explains, the principles of UIFSA promote the concept "that only one valid support order may be effective at any one time." *Id. See also* Kurtis A. Kemper, Annotation, *Construction and Application of Uniform Interstate Family Support Act,* 90 A.L.R. 5th 1, 33 (2001) (UIFSA "establishes a one-order system, in contrast to the multiple support orders that could be in effect in several states under its predecessors").

### 1. Is This a "One–State Proceeding"?

■ It is crucial to recognize that this case does not involve competing orders for

**5.** The 1996 version of UIFSA, in effect when the Superior Court ruled, was adopted by the Council in 1998. *See* D.C.Code § 46–301.01 (2001) (HISTORICAL AND STATUTORY NOTES); Unif. Interstate Family Support Act (1996), 9 U.L.A. 293 (2005). D.C. Law 16–137 subsequently amended those provisions to conform to the 2001 version of UIFSA, but those revisions did not take effect until April 1, 2007, D.C.Code § 46–301.01 (Supp.2007) (Historical and Statutory Notes), after the Superior Court ruled on the issues now before us. Notwithstanding the judiciary's presumption against retroactive legislation, *see Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), a court may apply new laws to pending cases when those laws "speak to the power of the court [to hear a case] rather than to the rights or obligations of the parties." *Coto v. Citibank FSB,* 912 A.2d 562, 566 n. 4 (D.C.2006) (quoting *Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483) (internal quotations omitted). The United States Supreme Court has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* (quoting *Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483) (internal quotations omitted). Intervening procedural laws may likewise be applied to pending suits. *See Duvall v. United States,* 676 A.2d 448, 450 (D.C.1996) ("laws which provide for changes in procedure may properly be applied to conduct which predated their enactment"); *accord, Landgraf,* 511 U.S. at 275, 114 S.Ct. 1483. The UIFSA revisions, effective on April 1, 2007, include a mix of procedural and jurisdictional changes, some of which may apply on remand. The parties have not briefed what effect, if any, they may have on the final disposition of this case, and we do not decide the question, but the recent revisions appear to be fully consistent with this opinion.

child support. Indeed, no such order has yet been issued by this, or any other, jurisdiction. Rather, Ms. Connole filed a request to issue or "establish" one. Moreover, Mr. DeGroot does not contest the Superior Court's jurisdiction over his person. Thus, this case might properly be analyzed as a "one-state proceeding." *See Case v. Case,* 103 P.3d 171, 175 (Utah Ct.App.2004) ("A one-state proceeding occurs when the forum state exercises its long-arm statute to bring the nonresident within the jurisdiction of the forum state, thus eliminating the interstate nature of the action."); *LeTellier v. LeTellier,* 40 S.W.3d at 495 ("the multistate provisions of UIFSA have no application when only one state is implicated"). As the comment to UIFSA § 202 explains, "[a]ssertion of long-arm jurisdiction over a nonresident essentially results in a one-state proceeding, notwithstanding the fact that the parties reside in different states. With two exceptions, the provisions of UIFSA—labeled an interstate act—are not applicable to such a proceeding. . . . In all other situations, the substantive and procedural law of the forum state applies." UNIF. INTER-

STATE FAMILY SUPPORT ACT § 202 cmt. (1996), 9 U.L.A. 335 (2005).[6]

Although the commentary just quoted suggests that—with two exceptions[7]— none of the provisions of UIFSA apply to a one-state proceeding, the text of UIFSA § 202 expressly excludes only chapters III through VII. See note 7, *supra.* This ambiguity is significant because UIFSA § 205, on which appellant principally relies is found in chapter II. Thus, whatever the contours of a one-state proceeding may be, we apparently cannot avoid confronting UIFSA § 205. Furthermore, in *Case* and *LeTellier,* the petitioner was a resident of the forum state. We therefore will assume, without deciding, that UIFSA § 205 and the other provisions of UIFSA apply to a case like this which involves residents of two or more states. Even so, appellant has not identified any provision of UIFSA that precludes the Superior Court from issuing a support order in the circumstances presented here.

### 2. The Rest of UIFSA

■ Section 401 of UIFSA, codified at D.C.Code § 46–304.01 (2001) ("Petition to

---

6. The Council did not enact the commentary that accompanies the pattern legislation, but it has cautioned that UIFSA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." D.C.Code § 46–309.01 (2001). "Therefore, we [may] properly look to the official comments contained in the model act for some guidance in an effort to ascertain the intent of the legislation." *Groseth v. Groseth,* 257 Neb. 525, 600 N.W.2d 159, 166 (1999). *Accord, LeTellier v. LeTellier,* 40 S.W.3d 490, 493 n. 2 (Tenn.2001); *Nordstrom v. Nordstrom,* 50 Va.App. 257, 649 S.E.2d 200, 203 (2007). However, we should not allow the commentary to obscure the plain language of the statutory text. "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used." *Peoples Drug Stores, Inc. v. District of Columbia,* 470

A.2d 751, 753 (D.C.1983) (en banc) (internal quotation marks and citation omitted).

7. The two exceptions are set forth in UIFSA § 202, codified at D.C.Code § 46–302.02 (2001), which provides:

> **Procedure when exercising jurisdiction over nonresident.**
> The Family Division, if it is exercising personal jurisdiction over a nonresident under § 46–302.01, may apply § 46–303.15 (special rules of evidence and procedure) to receive evidence from another state, and § 46–303.17 (assistance with discovery) to obtain discovery through a tribunal of another state. In all other respects, subchapters III through VII of this chapter do not apply and the tribunal shall apply the procedural and substantive law of the District, including the rules on choice of law other than those established by this chapter.

establish support order"), appears to be directly relevant, and it provides, in pertinent part, that

> (a) If a support order entitled to recognition under this chapter has not been issued, a responding tribunal of the District may issue a support order if:
>> (1) The individual seeking the order resides in another state; or
>> (2) The support enforcement agency seeking the order is located in another state. . . .

*Id.* The related commentary explains:

> This section authorizes a tribunal of the responding state to issue temporary and permanent support orders binding on an obligor over whom the tribunal has personal jurisdiction. UIFSA does not permit such orders to be issued when another support order exists, thereby prohibiting a second tribunal from establishing another support order and the accompanying continuing, exclusive jurisdiction over the matter. *See*

Section 205 (Continuing, Exclusive Jurisdiction) and Section 206 (Enforcement and Modification of Support Order by Tribunal Having Continuing Jurisdiction).[8]

UNIF. INTERSTATE FAMILY SUPPORT ACT § 401 cmt. (1996), 9 U.L.A. 398 (2005). Because Ms. Connole resides in another state, and because no support order has yet been issued, it would not "contravene" UIFSA § 401 if the Superior Court issued an order in this case.

Additional limits on the exercise of subject matter jurisdiction are found in section 204 of UIFSA, codified at D.C.Code § 46–302.04 (2001), and entitled "Simultaneous proceedings in another state."[9] Section 204 restricts the authority of the Superior Court "to establish a support order," but only in circumstances not present here. *See, e.g.,* D.C.Code § 46–302.04(a) (describing limited circumstances in which "[a] tribunal of the District *may* exercise jurisdiction to establish a support order if

---

**8.** D.C.Code § 46–301.01(20) (2001), defines "responding tribunal" as "the authorized tribunal in a responding state." D.C.Code § 46–301.01(19) (2001), in turn defines "responding state" as "a state in which a proceeding is filed or to which a proceeding is forwarded for filing from an initiating state under this chapter. . . ." UIFSA treats the District of Columbia as a "state," D.C.Code § 46–301.01(22) (2001), and the Family Division of the Superior Court is a "responding tribunal" in this case because it is the authorized tribunal of "a state in which a proceeding is filed. . . ." D.C.Code §§ 46–301.01, 301.2 (2001).

**9.** The statute reads as follows:

> **§ 46–302.04. Simultaneous proceedings in another state.**
> (a) A tribunal of the District may exercise jurisdiction to establish a support order if the petition or comparable pleading is filed after a petition or comparable pleading is filed in another state, but only if:
>> (1) The petition or comparable pleading in the District is filed before the expiration of the time allowed in the other state for filing a responsive pleading challenging the exercise of jurisdiction by the other state;
>> (2) The contesting party timely challenges the exercise of jurisdiction in the other state; and
>> (3) If relevant, the District is the home state of the child.
> (b) A tribunal of the District may not exercise jurisdiction to establish a support order if the petition or comparable pleading is filed before a petition or comparable pleading is filed in another state if:
>> (1) The petition or comparable pleading in the other state is filed before the expiration of the time allowed in the District for filing a responsive pleading challenging the exercise of jurisdiction by the District;
>> (2) The contesting party timely challenges the exercise of jurisdiction in the District; and
>> (3) If relevant, the other state is the home state of the child.
> D.C.Code § 46–302.04 (2001).

the petition or comparable pleading is filed *after* a petition or comparable pleading is filed in *another state. ...* " (emphasis added)); D.C.Code § 46–302.04(b) (describing circumstances in which "[a] tribunal of the District *may not* exercise jurisdiction to establish a support order if the petition or comparable pleading is filed *before* a petition or comparable pleading is filed in *another state. ...* " (emphasis added)). Of course, there was no proceeding in another state when Ms. Connole filed her motion in the Superior Court. Although she later filed a "protective" suit for child support in Maryland, none of the provisions in UIFSA § 204 would preclude the Superior Court from issuing a child support order in the circumstances presented here.[10]

Nevertheless, Mr. DeGroot insists that the Superior Court lacks subject matter jurisdiction to issue the support order sought by his ex-wife. He points to D.C.Code § 46–302.05 (2001)[11] and especially the corresponding comment in the Uniform Act, which explains that "if all the relevant persons—the obligor, the individual obligee, and the child—have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction *to modify.*" UNIF. INTERSTATE FAMILY SUPPORT ACT § 205 cmt. (1996), 9 U.L.A. 340 (2005) (emphasis added).[12] As its language makes obvious, the comment on which Mr. DeGroot relies discusses jurisdiction *to modify* a child support order. This key restriction implements the "one-order system" contemplated by UIFSA. *See In re Marriage of Hillstrom,* 126 P.3d 315, 318 (Colo.Ct.App. 2005) ("UIFSA allows for only one enforceable order in a case at any time. This is accomplished by limiting jurisdiction to modify the original order."); *Bordelon v. Dehnert,* 770 So.2d 433, 436 (La. Ct.App.2000) ("UIFSA attempts to limit modification jurisdiction to just one state at a time, once there is an existing child support award issued."). *See also Mc-Lean v. Kohnle,* 940 So.2d 975 (Miss.Ct. App.2006) (once Virginia court modified Mississippi divorce decree and support order, the Virginia order became the controlling order; Mississippi court lacked subject matter jurisdiction to modify its prior judgment).[13]

---

10. D.C.Code § 46–302.04(b)(1) seems to contemplate that the competing petition in another state would be filed by a parent who contests the jurisdiction of the District of Columbia. That did not happen here. In any event, Ms. Connole's "protective" suit did not restrict the authority of the Superior Court to establish a support order because she filed it after Mr. DeGroot had answered her motion in this jurisdiction. *See id.*

11. Section 46–302.05, entitled "Continuing, exclusive jurisdiction," provides in part:

(a) A tribunal of the District issuing a support order consistent with the law of the District has continuing, exclusive jurisdiction over a child support order:

(1) As long as the District remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consent with the tribunal of the District for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

12. The comment further explains that "by clear implication the subsection also defines how jurisdiction to modify [a child support order] may be lost." UNIF. INTERSTATE FAMILY SUPPORT ACT § 205 cmt. (1996), 9 U.L.A. 340 (2005). Section II.D.2 of the prefatory note states that "[e]xcept for narrowly defined fact circumstances, under UIFSA the only tribunal that can modify a support order is the one having continuing, exclusive jurisdiction over the order." *Id.,* 9 U.L.A. 288.

13. The scope of UIFSA § 205 is made even more clear by its current title, "Continuing, exclusive jurisdiction to modify child-support order." D.C.Code § 46–302.05 (2007 Supp.) (effective April 1, 2007).

The commentary suggests that the court automatically loses its continuing exclusive jurisdiction when all of the relevant parties have left the jurisdiction. However, the statute itself indicates that the issuing state loses its power to modify only when a court of another jurisdiction has modified the order: "A tribunal of the District issuing a child support order consistent with the law of the District may not exercise its continuing jurisdiction to modify the order *if the order has been modified by a tribunal of another state* pursuant to a law substantially similar to this chapter." D.C.Code § 46–302.05(b) (emphasis added.). We need not resolve the ambiguity because "the drafters of the Uniform Act intended section 205(a) to apply only to the court's jurisdiction *to modify* its support orders[,]" *Zaabel v. Konetski*, 209 Ill.2d 127, 282 Ill.Dec. 748, 807 N.E.2d 372, 376 (2004), and the power to modify a child support order is not at issue here.[14]

■ As many cases illustrate, subject matter jurisdiction is not a monolithic concept under UIFSA. *See Jurado v. Brashear*, 782 So.2d 575, 579 (La.2001) ("[I]f the issuing state loses continuing, exclusive jurisdiction (such as when the obligor, the obligee and the child all relocate to another state), and no party takes actions to establish jurisdiction in another state (which would be the responding state if such action had been taken), two separate questions arise: (1) whether the court of the issuing state may *enforce* the order that it issued and (2) whether that court may *modify* the order." (emphasis in original)). Curiously enough, a court may lack jurisdiction to modify an order it issued, but still retain jurisdiction to enforce it. *See, e.g., Linn v. Delaware Child Support Enforcement*, 736 A.2d 954, 956 (Del.1999) (holding "that a Minnesota Court did not

lose jurisdiction in 1995 to enforce its 1983 Child Support Order, despite that all the parties and the children had left Minnesota by that time, because no other court had assumed jurisdiction over the matter."); *Zaabel*, 282 Ill.Dec. 748, 807 N.E.2d at 377 ("We hold that section 205(a) of the Act does not apply to the circuit court's jurisdiction to enforce its support order."); *Lunceford v. Lunceford*, 204 S.W.3d 699, 706 (Mo.Ct.App.2006) ("Although an issuing state may lose subject matter jurisdiction to modify a child support order, that state may still enforce the child support order then in effect until the order is properly modified by another state pursuant to UIFSA."); *Nordstrom v. Nordstrom*, 50 Va.App. 257, 649 S.E.2d 200, 204 (2007) ("the trial court retained continuing jurisdiction to *enforce*, as opposed to modify, the order ...." (emphasis in original)); *Commonwealth, Dept. of Social Services ex rel. Kenitzer v. Richter*, 23 Va. App. 186, 475 S.E.2d 817, 820 (1996) ("We hold that Virginia continues to have the right to enforce its own decrees even if all parties are no longer residents."); *cf. Desai v. Fore*, 711 A.2d 822 (D.C.1998) (case not governed by UIFSA; Superior Court had jurisdiction to enforce its child support order although parents and children no longer lived in the District of Columbia).

■ The parties have not cited, and we have not found, a case precisely like this one, but we apply the principles discussed above, refining our inquiry to ask: subject matter jurisdiction to do what? As we have seen, Section 205 and its commentary do not restrict the Superior Court's jurisdiction to issue or establish a support order in the circumstances presented here, and we have found no other provision of UIFSA that does so. Mr. DeGroot thus

---

**14.** As discussed above, Ms. Connole has asked the Superior Court to modify the divorce decree. That, of course, is a different matter, not governed by UIFSA.

has not demonstrated that it would "contravene" UIFSA if the Superior Court retained jurisdiction of this case for the purpose of issuing or establishing a support order, as otherwise authorized by our case law and by D.C.Code § 16–914.01. We therefore hold that the Family Division of the Superior Court has jurisdiction to consider Ms. Connole's motion, irrespective of the fact that the parties no longer reside in the District.[15]

### D. Additional Arguments

 DeGroot makes two additional points. First, he asks us to uphold the judgment on alternative grounds, arguing that "[d]ismissal for forum non conveniens reasons would have been appropriate in this case." A motion to dismiss because the chosen forum is inconvenient calls for an exercise of the "broad discretion" of the trial court. *See Rolinski v. Lewis*, 828 A.2d 739, 750 (D.C.2003) (en banc). It is not our role to exercise that discretion. *See Begum v. Auvongazeb*, 695 A.2d 112, 114 (D.C.1997) (declining to uphold a dismissal for lack of personal jurisdiction on the alternative ground of *forum non conveniens*); *Matthews v. Automated Business Systems & Services, Inc.*, 558 A.2d 1175, 1180 n. 9 (D.C.1989) (declining to

affirm dismissal for lack of subject matter jurisdiction on alternative ground of *forum non conveniens;* this court may not substitute its discretion for that of the trial court). Second, Mr. DeGroot warns us of the dangers of simultaneous litigation in multiple forums. This is not an inevitable result of our holding, however. Counsel for Ms. Connole stated at oral argument that his client will dismiss her suit in Maryland if we rule that the Superior Court has subject matter jurisdiction. Even if she fails to do so, UIFSA provides ground rules for refereeing jurisdictional battles among courts of different jurisdictions, which, as we note above, Mr. DeGroot has thus far failed to properly invoke.

### III. Conclusion

We conclude that the Superior Court has subject matter jurisdiction to enter a child support order under the circumstances presented.[16] Accordingly, we reverse the judgment of the Superior Court and remand for further proceedings consistent with this opinion.

*So ordered.*

---

15. Citing the commentary to UIFSA § 201; *M.F. v. W.P.*, 126 Daily Wash. L. Rptr. 1233 (D.C.Super.Ct.1998); and *Harrar v. Harrar*, 2004 WL 2102099 (D.C.Super.Ct.2004), the trial court concluded that "in order for this Court to have jurisdiction to enter a child support order, one of the relevant parties, *i.e.*, the obligee, the obligor, or the children, must reside in the District of Columbia." Each of these authorities is distinguishable, however. The decision in *M.F.* and the commentary to UIFSA § 201 deal with the issue of personal jurisdiction, which is not contested here. *Harrar* addresses jurisdiction to modify an existing order. We express no views on whether these two decisions correctly resolved the issues they addressed.

16. Before concluding, we underscore the limits of our holding. The trial court stated that it "[did] not consider [Ms. Connole's] motion to be a petition, [subject to transfer] as described in D.C.Code § 46–303.10." We do not address that issue here. Likewise, it is not necessary to consider Ms. Connole's alternative argument that the Superior Court had jurisdiction to enforce an oral promise to furnish child support (allegedly made in the District of Columbia). Furthermore, we have not conducted any choice of law analysis, either under *Mims v. Mims*, 635 A.2d 320 (D.C.1993), or under UIFSA. Finally, our discussion does not resolve any of the merits of the case. We leave these issues to be addressed, if and when necessary, by the Superior Court.